## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | CRIMINAL CASE NO. 3:18-CR-005-D |
| | ) | |
| CHRISTOPHER MAURICE DANIELS | ) | |
| | ) | |

## MOTION TO DISMISS THE INDICTMENT

The indictment alleges that Defendant Christopher Maurice Daniels ("Mr. Daniels") unlawfully possessed a firearm after a conviction for "a misdemeanor crime of domestic violence," in violation of 18 U.S.C. § 922(g)(9).  Dkt. No. 14 at 1.  The alleged "misdemeanor crime of domestic violence" is Tennessee "domestic assault."  *Id.*  Because Tennessee "domestic assault" does not categorically fit the generic federal offense, this Court should dismiss the indictment.

## I.    BACKGROUND

The indictment alleges that Mr. Daniels unlawfully possessed two firearms after a 2007 conviction for "domestic assault" in Tennessee.  Dkt. No. 14 at 1.  The Tennessee statute establishing the offense of "Domestic Assault" provides that a person violates the statute if he or she "commits an assault as defined in § 39-13-101."  TENN. CODE ANN. § 39-13-111(b).  "Assault" is further defined as:

(1)    Intentionally, knowingly or recklessly caus[ing] bodily injury to another;

(2)    Intentionally or knowingly caus[ing] another to reasonably fear imminent bodily injury; or

(3)    Intentionally or knowingly caus[ing] physical contact with another and a reasonable person would regard the contact as extremely offensive or provocative.

*Id.* § 39-13-101(a).  For a prior offense to qualify as a "misdemeanor crime of domestic violence," it must have "as an element, the use or attempted use of physical force, or the threatened use of a deadly weapon."  18 U.S.C. § 921(a)(33)(A)(ii).

## II.      ARGUMENT

This Court may dismiss an indictment prior to trial if the dismissal is based on a purely legal argument.  *See United States v. Flores*, 404 F.3d 320, 324 (5th Cir. 2005).   In *United States v. Castleman*, 134 S. Ct. 1405 (2014), the Supreme Court decided that a Tennessee "domestic assault" conviction—narrowed to "assault" as defined in § 39-13-101(a)(1)— constituted a "misdemeanor crime of domestic violence."  *Id.* at 1413–15.  But the parties in *Castleman* did not contest the statute's divisibility, thus paving the way for the court to analyze only part of the crime, namely, "the knowing or intentional causation of bodily injury."  *Id.* at 1414.  *Castleman* accordingly did not answer the question presented here: "whether a domestic assault conviction in Tennessee *categorically* constitutes a 'misdemeanor crime of domestic violence.'"  *Id.* (emphasis added).  This is a pure "question of law." *United States v. White*, 258 F.3d 374, 382 (5th Cir. 2001).

## A.      Tennessee "domestic assault" does not categorically constitute a "misdemeanor crime of domestic violence."

### 1.      To determine whether an alleged predicate conviction is a "misdemeanor crime of domestic violence," the court must apply the categorical approach.

In considering the Tennessee "domestic assault" conviction, the Court must "look[]only to the statutory definition[] of the prior offense[], and not to the particular facts underlying th[e] conviction."  *Taylor v. United States*, 495 U.S. 575, 600 (1990); *Castleman*, 134 S. Ct. at 1413 (applying *Taylor*'s categorical approach in the context of a § 922(g)(9) prosecution).  To be a "misdemeanor crime of domestic violence," the offense must have "as an element, the use or attempted use of physical force, or the threatened use of a deadly weapon."   18 U.S.C.

§ 921(a)(33)(A)(ii).  "If any set of facts would support a conviction without proof of that component, then the component most decidedly is not an element—implicit or explicit—of the crime."  *United States v. Vargas-Duran*, 356 F.3d 598, 605 (5th Cir. 2004) (en banc).  Here, the requisite inquiry focuses on whether all means of committing "assault" as defined in § 39-13-101 "necessarily 'ha[ve], as an element, the use or attempted use of physical force, or the threatened use of a deadly weapon.'"  *Castleman*, 134 S. Ct. at 1413 (citing 18 U.S.C. § 921(a)(33)(A)).

### 2.    Not all "assaults" in Tennessee necessarily involve "the use or attempted use of physical force, or the threatened use of a deadly weapon."

*Castleman* strongly suggested that the statute, considered as a whole, would *not* meet the federal definition: "[i]t does not appear that every type of assault defined by § 39-13-101 necessarily involves 'the use or attempted use of physical force, or the threatened use of a deadly weapon.'"  *Id.* at 1413–14.  The Tennessee "domestic assault" conviction cannot support the instant § 922(g)(9) prosecution precisely for this reason.

In particular, the commission of "domestic assault" by means of § 39-13-101(a)(2) sweeps in conduct broader than what the federal definition proscribes.  TENN. CODE ANN. § 39-13-101(a)(2) (defining assault to include "[i]ntentionally or knowingly caus[ing] another to reasonably fear imminent bodily injury.").  A "misdemeanor crime of domestic violence," unlike several other federal definitions, does not include crimes with the *threatened* use of force as an element.  Instead, the definition explicitly limits the qualifying threats to those that involve the "use of a deadly weapon."  *Compare* 18 U.S.C. § 921(a)(33)(A)(ii) (reaching only those misdemeanors that "ha[ve], as an element, the use or attempted use of physical force, or the threatened use of a deadly weapon") *with* 18 U.S.C. §§ 16(a), 373(a), 924(c)(3)(A), 924(e)(2)(B)(i), 3156(a)(4)(A), and 3559(c)(2)(F)(ii) (which reach offenses that have, as an element, "the use, attempted use, or *threatened* use of physical force" (emphasis added)).

3

Especially when juxtaposed against all these other federal definitions, it is clear that Congress chose not to disarm those convicted of mere threatening without the use of a deadly weapon.  And as noted by *Castleman*, "[a] threat under § 39–13–101(2) may not necessarily involve a deadly weapon."  134 S. Ct. at 1414.  In fact, if a threat does involve a threat to use a deadly weapon, the state code elevates such conduct from "assault" to "aggravated assault."  *See* TENN. CODE. ANN. § 39–13–102(a)(1)(A)(iii).

The Eighth Circuit's decision in *United States v. Horse Looking*, 828 F.3d 744 (8th Cir. 2016), applies this reasoning to a conviction under South Dakota's simple assault statute. *See id.* at 746–47.  Similar to Tennessee, South Dakota defined simple assault to include "[a]ttempts by physical menace or credible threat to put another in fear of imminent bodily harm." *Id.* at 746 (citing S.D. Codified Laws § 22-18-1(4)).  Concluding that a person "could violate subsection (4) without using or attempting to use force, and without threatening the use of a deadly weapon"—by, for instance, "[p]umping a fist in an angry manner," the court in *Horse Looking* held that "if Horse Looking was convicted under § 22-18-1(4), his federal conviction [under 18 U.S.C. § 922(g)(9)] cannot stand." *Id.* at 747.

As in *Horse Looking*, a person could violate the Tennessee "domestic assault" statute by "pumping a fist in an angry manner"—or, as was the case in *State v. McCaleb*, by making verbal threats with gritted teeth and a clenched fist.  *See State v. McCaleb*, No. 01C01-9707-CC-00251, 1998 WL 408620, at *1–*2 (Tenn. Crim. App. July 22, 1998) (rejecting a sufficiency of the evidence challenge to a simple assault conviction where "the defendant's threatening speech and gestures," namely a clenched fist and gritted teeth, made the victim fear imminent bodily harm). Consequently, like a § 922(g)(9) charge cannot rest on a conviction for simple assault in South

Dakota under § 22–18–1(4), it similarly cannot rest, as charged by the Government here, on a conviction for domestic assault in Tennessee.

**B.      The Government cannot "narrow" the overbroad Tennessee statute because it cannot show that the statute is divisible.**

Here, the Government may argue that the court can "narrow" Mr. Daniels's conviction, as the conviction at issue in *Castleman* was narrowed, under the modified categorical approach. When the statute of conviction is divisible and over-inclusive—that is, when the statute "sets out one or more elements in the alternative," and "one alternative . . . matches an element in the generic offense, but the other . . . does not"—the court may use the modified categorical approach to narrow the offense of conviction. *See Descamps v. United States*, 133 S. Ct. 2276, 2281 (2013). Because *Castleman* did not address the divisibility of the Tennessee "domestic assault" statute, it does not serve as precedent on whether the statute is in fact divisible. 134 S. Ct. at 1414.

A statute's divisibility depends on whether the statute can be divided into alternative *elements*, thereby defining multiple crimes; not whether one particular element may be violated through multiple means. *Mathis v. United States*, 136 S. Ct. 2243, 2248–49 (2016). In analyzing a prior offense, a subsequent court should not weigh in on evidentiary disputes involving that offense, as this would raise serious practical and constitutional concerns. *Taylor*, 495 U.S. at 600–02. Accordingly, the Government may not rely on the "'underlying brute facts or means' of commission" of the prior offense to show what its elements were. *Mathis*, 136 S. Ct. at 2251.

Here, the crime of "domestic assault" has a single, indivisible element—the commission of an assault. TENN. CODE. ANN. § 39-13-111(b). There are multiple means of proving that element—for instance, by causing bodily injury or causing someone to fear imminent bodily injury. *See* TENN. CODE ANN. § 39-13-101. But these multiple means of committing the offense do not constitute separate divisible crimes.

5

## III.    CONCLUSION

Because not all means of committing "assault" necessarily include the use or attempted use of physical force, or the threatened use of a deadly weapon, Tennessee "domestic assault" does not categorically constitute a misdemeanor crime of domestic violence.   Furthermore, as the Government cannot show that the Tennessee domestic assault statute is divisible, the offense of conviction cannot be narrowed.   Accordingly, Mr. Daniels moves to dismiss the indictment charging a violation of § 922(g)(9).   Even if every "fact" alleged in the indictment were true, he would not be guilty of the alleged offense as a matter of law.

Respectfully submitted,

JASON D. HAWKINS
Federal Public Defender
Northern District of Texas

*s/ Gabriela Vega*
M. GABRIELA VEGA
Assistant Federal Public Defender
Northern District of Texas
Texas Bar No. 24084014
525 Griffin Street, Suite 629
Dallas, Texas 75202
Phone (214) 767-2746
Fax (214) 767-2886
gabriela_vega@fd.org

John M Nicholson
Assistant Federal Public Defender
Northern District of Texas
Texas Bar No. 24013240
525 Griffin Street, Suite 629
Dallas, Texas 75202
Phone (214) 767-2746
Fax (214) 767-2886
john_nicholson@fd.org

6

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 24, 2018, I electronically filed the foregoing document using the ECF system of the U.S. District Court, Northern District of Texas.   Per L. Crim. R. 49.2(e), delivery of the automatically generated ECF notice constitutes service under Fed. R. Crim. P. 49(b) on the following attorneys of record:

Jennifer Tourje
U.S. Attorney's Office
1100 Commerce St., Third Floor
Dallas, TX 75242
(214) 659-8600
Fax: (214) 767-4100
jennifer.tourje@usdoj.gov

*s/ Gabriela Vega*
M. Gabriela Vega
Assistant Federal Public Defender