IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

|  |  |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | No. 3:18-CR-5-D |
| CHRISTOPHER MAURICE DANIELS | |

**RESPONSE TO DANIELS'S MOTION APPEALING
THE MAGISTRATE JUDGE'S DETENTION ORDER**

The government files this response to Daniels's motion under 18 U.S.C. § 3145(b) to revoke the magistrate judge's pretrial detention order and to release him pending trial. Because the record contains more than enough evidence to establish that Daniels is a danger to the community, this Court can easily deny the motion.

**1.    The government charged Daniels with being a prohibited person in possession of two firearms, including an assault rifle, and proved at the detention hearing that Daniels is a danger to the community.**

The government charged Daniels by criminal complaint with one count of possessing a firearm after having sustained a misdemeanor domestic violence conviction in Tennessee, in violation of 18 U.S.C. § 922(g)(9).  (Dkt. 1.)  Following Daniels's arrest, the government moved to detain him as a flight risk and as a danger to the community. (Dkt. 3.)  Magistrate Judge Stickney conducted a detention hearing on December 15, 2017,[1] during which FBI Special Agent Aaron Keighley testified.  (Dkt. 12.)

---

[1] Several days after the detention hearing, the government indicted Daniels on the same Section 922(g)(9) charge.  (Dkt. 14.)

Agent Keighley explained that Daniels first came to the FBI's attention in March 2015, when he participated in an anti-law enforcement demonstration in Austin, Texas, that was recorded and later posted on various websites. (*Id.* at 3-4.) Agent Keighley watched the video and saw that the crowd in which Daniels was marching chanted phrases like "Oink oink bang bang" and "The only good pig is a pig that's dead." (*Id.* at 4.) The FBI then found that Daniels, using the aliases Rakem Khafre and Rakem Khafre Balogun, had posted several alarming statements on his Facebook page. (*Id.* at 4-5; *see* Govt. Ex. 1.) For example, he posted a photograph of Tremaine Wilbourn, a suspect in the slaying of a Memphis police officer, with a caption that read, "Salute a real hero!" (Dkt. 12 at 6; Govt. Ex. 1 at 1.) He also posted that the five slain Dallas police officers "deserved what they got" in the July 7, 2016 ambush. (Dkt. 12 at 7; Govt. Ex. 1 at 2.)

On another occasion, Daniels posted a photo of himself, noting that he wore "brown and khaki in solidarity for Micah X," meaning Micah Xavier Johnson, the shooter in the Dallas ambush. (Dkt. 12 at 7; Govt. Ex. 1 at 4.) This post also included the hashtag "#77," which the agent explained referred to July 7, the date of the ambush. (Dkt. 12 at 8; Govt. Ex. 1 at 4.) Daniels's shirt in that photo had a picture of an AK-47 assault rifle on it. (Dkt. 12 at 8; Govt. Ex. 1 at 4.) He also posted a close-up photo of the rifle on his shirt and two crime-scene photos from the ambush. (Dkt. 12 at 8; Govt. Ex. 1 at 4.)

In another post, Daniels celebrated the one-year anniversary of the Dallas massacre by posting that "Today one year ago one Black Man brought Dallas Pig Department to their knees. #77." (Dkt. 12 at 9; Govt. Ex. 1 at 6.) He also shared another

person's post, written on the eve of the anniversary, which read: "Tommorow [sic] they will mourn the police.  we [sic] will be saluting micah johnson!  We will reme[m]ber philando castle, allon sterling, and the others.  With revenge in our hearts!"  (Dkt. 12 at 9; Govt. Ex. 1 at 5.)

Agent Keighley explained that, at some point, the FBI learned that Daniels planned to attend a training event in Detroit, Michigan in November 2017.  (Dkt. 12 at 9.)  Agents also learned that, on Daniels's flight to Detroit, he put a .38-caliber handgun in his checked baggage.  (*Id*.)  He also placed the firearm in his luggage for the flight back to Dallas.  (*Id*. at 9-10.)  His luggage was delayed on the return flight, and Daniels asked that the airline deliver it to his apartment.  (*Id*.)

The FBI further learned that Daniels had previously sustained a conviction for misdemeanor domestic assault in Tennessee.  (*Id.* at 11.)  The state-court judgment specified that Daniels could not possess a firearm.  (*Id*. at 12.)

Agents executed a search warrant for Daniels's apartment on December 12, 2017.  (*Id*.)  They found two firearms—the .38-caliber handgun, which was loaded and located on Daniels's nightstand, and a Norinco AK-style assault rifle, which was located within inches of the foot of Daniels's bed.  (*Id*. at 13.)  The rifle contained an empty magazine, and agents found a fully-loaded magazine within arm's reach of the bed.  (*Id*. at 14.)  They also recovered body armor and "[s]omewhere between 50 to 100 7.67 caliber ammunition."  (*Id*.)  At the time the agents entered the apartment, a minor was lying on a cot in the living room, and backpacks, notebooks, homework, and other such possessions were in the apartment.  (*Id*.)

On cross-examination, the defense attorney sought to have Agent Keighley agree that he found no statements by Daniels "saying that [Daniels] specifically wanted to harm a law enforcement officer." (*Id*. at 16.) The agent responded that, while "[n]ot necessarily specific," Daniels had posted a video to Facebook stating something to the effect of, "[L]ook at my history. I'm not afraid to get violent." (*Id*.) The defense called no witnesses. (*Id*. at 17.)

In arguing that Daniels posed a danger to the community, the prosecutor discussed the above evidence and also emphasized the pretrial services report, which showed "a history of assaultive prior arrests and convictions." (*Id*. at 18.) Based on this evidence and argument, the magistrate judge found that Daniels was a "danger to the safety of the community" and should be detained pending trial. (*Id*. at 20.) In his written order, the judge reasoned that "[t]he Government introduced evidence at the hearing that Mr. Daniels unlawfully possessed firearms and attempted to ship a firearm in his luggage" and found that, "[d]ue to the nature and extent of this criminal activity, . . . there is no condition or combination of conditions of release which would reasonably assure . . . the safety of the community." (Dkt. 9 at 1.)

2. **A *de novo* review of the record demonstrates that Daniels is a danger to the safety of the community.**

Daniels has moved under 18 U.S.C. § 3145(b) for review of the magistrate judge's detention order. This Court conducts a *de novo* review of the record to determine whether detention is appropriate. *See United States v. Ivy*, No. 2:17-MJ-36-BB(1), 2017 WL 1928665, at *1 n.1 (N.D. Tex. 2017) (Fitzwater, J.). The Court should detain a

defendant if it finds that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e)(1).  It applies a preponderance-of-the-evidence standard in deciding whether Daniels is a flight risk, *United States v. Fortna*, 769 F.2d 243, 249 (5th Cir. 1985), and a clear and convincing evidence standard to determine whether Daniels poses a danger to the community, 18 U.S.C. § 3142(f)(2)(B).  Here, although the magistrate judge noted that there was little evidence related to Daniels's risk of flight, he found that clear and convincing evidence demonstrated that Daniels is a danger to the community.  This Court should find the same.

18 U.S.C. § 3142(g) provides that the Court must consider the following factors in determining whether there is a condition or combination of conditions that will assure the safety of any person and the community:

> (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;
>
> (2) the weight of the evidence against the person;
>
> (3) the history and characteristics of the person, including—
>
>> (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
>>
>> (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and

> (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

18 U.S.C. § 3142(g).

These factors strongly demonstrate that Daniels poses a danger to the community. In terms of the nature of the crime charged, Daniels previously sustained a domestic-violence conviction and knew he was prohibited from ever possessing a firearm. Yet authorities found him in possession of two firearms—a handgun and an AK-style assault rifle. The handgun was loaded and the assault rifle was close to a loaded magazine, and both the firearms and magazine were within reach of his bed. They also found him in possession of 50 to 100 rounds of ammunition and body armor. Moreover, Daniels does not even suggest that he possessed the guns solely for home protection. Rather, the undisputed facts show that, as the magistrate judge noted, Daniels traveled from Dallas to Detroit and back with one of the firearms. He also allowed the firearms and ammunition to remain unsecured around a minor.

In terms of Daniels's mental condition, past conduct, and criminal history, his criminal history demonstrates a history of violence, and his Facebook posts and related conduct show that he harbors an abnormally high level of anger and aggression—particularly at law enforcement. These facts also relate to another factor, the nature and seriousness of the danger to any person or the community that would be posed by Daniels's release. Daniel poses an unusually high threat to the community, including law enforcement, and a potential threat to the minor whom authorities found in his apartment, living amongst the unsecured firearms and ammunition.

Based on the record, viewed in light of the factors in Section 3142(g), this Court can easily conclude by clear and convincing evidence that no condition or combination of conditions would reasonably assure the safety of any other person and the community, and that he should remain detained pending trial.

**3.    Daniels's arguments in favor of release are unavailing.**

Daniels asserts that the Court should release him pending trial because (1) the government's charge against him is allegedly legally invalid, and (2) the government's dangerousness evidence included Facebook posts, which he argues the First Amendment protects from use as evidence in such proceedings. Neither claim is correct.

First, that Daniels filed a motion to dismiss the indictment based on alleged legal infirmity, (*see* Dkt. 21), has no bearing on the Court's detention decision.[2] Daniels cites no authority to support the proposition that the district court should consider the merits of a motion to dismiss in the context of the review of a magistrate judge's detention order. Moreover, the alleged legal infirmity of a charge is not a specific factor listed in 18 U.S.C. § 3142. Although Daniels might argue that Section 3142(g)(1) instructs the Court to evaluate "the nature and circumstances of the offense charged," that section goes on to provide examples that relate to the *type* of crime charged—that is, "whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device." § 3142(g)(1). This illustrative language demonstrates that this factor relates to the

---

[2] The government will file a response to the motion to dismiss within 14 days of the motion's filing date unless otherwise ordered.

charge's subject matter, not to whether the defendant is claiming the charge is legally infirm or the case is otherwise defective. *Cf. United States v. Bellomo*, 944 F. Supp. 1160, 1163 (S.D.N.Y. 1996) ("The issue . . . before the Court [in a detention proceeding] is whether there is a risk that [the defendant] will flee the jurisdiction or endanger others before the trial can be held, not whether he is guilty or innocent of the charges in the indictment.").

Second, Daniels's First Amendment argument is misplaced. The government has not charged him with a crime based on his Facebook posts and other statements. Rather, it simply used those statements at the detention hearing to demonstrate his state of mind, which is one of aggression and hostility, particularly toward law enforcement. In a similar case, another district court held that the First Amendment did not prohibit use of expressive material in a detention hearing. *See United States v. Reiner*, 468 F. Supp. 2d 393 (E.D.N.Y. 2006). Reiner was charged with a child-pornography offense, and the government presented evidence at the detention hearing that he possessed "2,000 stories from a website (and active[ly] participat[ed] with the creator in the content of that site) devoted to killing, sexually abusing, and eating children," and "evidence of email communications with others sharing these fantasies." *Id*. at 397. The magistrate judge released the defendant, and the government moved for the district court to review the decision. *Id*. at 394. The district court found that the evidence described above, along with other parts of the record, demonstrated by clear and convincing evidence that Reiner was a danger to the community. *Id*. at 397-99.

In so doing, the district court rejected Reiner's argument that the expressive materials were exempt from use as evidence in a detention hearing because they might fall within the bounds of the First Amendment. *Id.* at 399. The court reasoned that "[e]ven if that evidence . . . constitutes protected speech under the First Amendment, it still may be considered by the Court on the issue of dangerousness as it relates to," among other things, the "defendant's overall state of mind." *Id.*; *see also United States v. Cannon*, 750 F.3d 492, 508 (5th Cir. 2014) (affirming the admission of "speech-based evidence showing that Defendants harbored white-supremacist views" and noting that "[t]he Supreme Court has made clear that the First Amendment 'does not prohibit the evidentiary use of speech to establish the elements of a crime or to prove motive or intent'") (quoting *Wisconsin v. Mitchell*, 508 U.S. 476, 489 (1993)).

The same rule applies here. The government used the Facebook posts and related evidence to demonstrate Daniels's state of mind or "mental condition," which is one of the factors the Court is required to consider in determining whether he is a danger to the community. This Court may—and, in fact, should—consider them in determining whether the government met the clear-and-convincing evidence standard.

## **Conclusion**

In sum, as the magistrate judge found, the government established by clear and convincing evidence that Daniels is a danger to the community, and Daniels's arguments do not show otherwise. This Court should deny Daniels's motion and leave the detention order in place.

Respectfully submitted,

ERIN NEALY COX
United States Attorney

*s/ Leigha Simonton*
LEIGHA SIMONTON
Assistant United States Attorney
Texas Bar No. 24033193
1100 Commerce Street, Third Floor
Dallas, Texas 75242
Telephone: (214) 659-8669
leigha.simonton@usdoj.gov

## CERTIFICATE OF SERVICE

I certify that on January 25, 2018, I electronically filed this document with the Clerk of Court for the United States District Court for the Northern District of Texas using the electronic filing system of the Court.  The electronic case filing system will send a notice of filing to all the attorneys of record who have consented to such service.

*s/ Leigha Simonton*
LEIGHA SIMONTON