IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | § |
| | § |
| Plaintiff, | § |
| | § Criminal No. 3:18-CR-005-D |
| VS. | § |
| | § |
| CHRISTOPHER MAURICE DANIELS, | § |
| | § |
| Defendant. | § |

MEMORANDUM OPINION
AND ORDER

Defendant Christopher Maurice Daniels ("Daniels") moves pursuant to 18 U.S.C. § 3145(b) to revoke the magistrate judge's order directing that he be detained pending trial. Plaintiff United States of America (the "government") opposes the motion. Following *de novo* review of the evidence presented at the detention hearing conducted by the magistrate judge,[1] and for the reasons that follow, the court denies Daniels' motion and orders that he be detained pending trial.

---

[1] "In reviewing a magistrate judge's order of pretrial release, the district court acts *de novo* and makes an independent determination of whether release is proper." *United States v. Arias*, 1997 WL 367860, at *2 (5th Cir. June 12, 1997) (citing *United States v. Rueben*, 974 F.2d 580, 585 (5th Cir. 1992); 18 U.S.C. § 3145(a)(1)). The court's review of the record developed before the magistrate judge is an appropriate procedure to comply with that obligation. *See, e.g., United States v. Farguson*, 721 F. Supp 128, 129 n.1 (N.D. Tex. 1989) (Fitzwater, J.).

I

Daniels is charged in a one-count indictment with possession of a firearm by a prohibited person, in violation of 18 U.S.C. §§ 922(g)(9).[2] The government moved for pretrial detention under 18 U.S.C. § 3142(e), contending that Daniels presents a risk of flight and a risk to the safety of any other person and the community.

The magistrate judge conducted a detention hearing on December 15, 2017 in which Special Agent Aaron Keighley ("Agent Keighley"), a special agent with the Federal Bureau of Investigation ("FBI"), testified. According to Agent Keighley, who is the case agent, Daniels first attracted the FBI's attention in March 2015 when he participated in an anti-law enforcement demonstration in Austin, Texas. Agent Keighley testified that videos posted on several websites showed Daniels and other members of the crowd chanting various phrases that were derogatory toward law enforcement, including "Oink oink bang bang" and "The only good pig is a pig that's dead." Hrg. Tr. 4.

The FBI then investigated Daniels' online activity. Agent Keighley testified that Daniels had posted on his Facebook profile several statements praising violence against police officers.[3] For example, in August 2015 Daniels posted a photograph of Tremaine Wilbourn—a suspect in the death of a Memphis police officer—with this caption: "Salute

---

[2]Daniels was initially charged in a criminal complaint on December 12, 2017. The grand jury handed up the indictment on January 9, 2018, after the detention hearing. The indictment also charges 18 U.S.C. § 924(a)(2) as the applicable penalty provision.

[3]The hearing testimony reflects that Daniels has used several aliases on Facebook, including "Rakem Khafre" and "Rakem Khafre Balogun."

a real hero!" Gov't Ex. 1 at 1. Daniels also made several posts applauding the July 7, 2016 ambush and killing of five Dallas police officers, with one post stating that the slain officers "deserve[d] what they got." *Id.* at 2. Another consisted of a photograph of Daniels, noting that he was wearing "brown and khaki in solidarity for Micah [Xavier Johnson]," the shooter in the July 7 ambush. *Id.* at 4. This post was accompanied by two crime-scene photos from the incident. *Id.* On the eve of the one-year anniversary of the July 7 ambush, Daniels shared this post: "Tommorow [sic] they will mourn the police. we [sic] will be saluting micah johnson! We will [remember] philandro castle [sic], allon [sic] sterling, and the others. With revenge in our hearts!" *Id.* at 5. The next day, Daniels wrote in a post: "Today one year ago one Black Man brought Dallas Pig Department to their knees." *Id.* at 6. Agent Keighley testified that Daniels neither specifically posted that he wanted to harm a law enforcement officer nor directed another person to do so. But Agent Keighley did testify that Daniels stated in a Facebook video that others should "look at my history. I'm not afraid to get violent." Hrg. Tr. 17.

Agent Keighley also testified that the FBI later learned that Daniels intended to attend a training event in Detroit in November 2017. On the flight to Detroit, Daniels packed a .38 caliber handgun in his checked luggage and, as part of the airline's required protocol, disclosed that he had done so. When his luggage was delayed on his return flight, Daniels asked the airline to deliver his bag—containing the .38 caliber handgun—to his apartment.

Separately, the FBI also discovered that Daniels had previously been convicted in

-3-

Tennessee of a misdemeanor domestic violence offense. This state court judgment specified that Daniels could not possess a firearm.

After obtaining a warrant, FBI agents searched Daniels' apartment on December 12, 2017. Agent Keighley testified that agents found the .38 caliber handgun, which was loaded, and a Norinco AK-style assault rifle. Both firearms were discovered unsecured and within feet of Daniels' bed. Agents also seized body armor, a fully loaded magazine for the assault rifle, and dozens of 7.67 caliber rounds. Agent Keighley stated that, when agents executed the search warrant, a minor was lying on a cot in the apartment living room.

In addition to soliciting the above testimony from Agent Keighley, government counsel in summation pointed to Daniels' pretrial services report, which she maintained included "a history of assaultive prior arrests and convictions." Hrg. Tr. 18. Daniels' adult criminal history includes seven prior arrests, five of which were for assault-related offenses. Daniels presented no witnesses at the detention hearing.

The government argued before the magistrate judge that Daniels is both a flight risk and a danger to the community. The magistrate judge ordered that Daniels be detained pending trial, finding that he poses "a danger to the safety of the community." *Id.* at 20. Daniels now seeks on various grounds to revoke the detention order under 18 U.S.C. § 3145(b). The government opposes the motion.

II

An individual shall be released pending trial unless a judicial officer finds that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other persons and the community." 18 U.S.C. § 3142(e)(1). Because the court is ordering Daniels detained on the basis that he presents a risk to the safety of any other persons and the community, it need not decide whether he is a flight risk. *See United States v. Fortna*, 769 F.2d 243, 249 (5th Cir. 1985) ("[T]he lack of reasonable assurance of *either* the defendant's appearance *or* the safety of others or the community is sufficient [to detain a defendant without bond]; both are not required."). The court applies a clear and convincing evidence standard to determine whether the government has proved that Daniels poses a danger to the community. *See* 18 U.S.C. § 3142(f)(2)(B) ("The facts the judicial officer uses to support a finding . . . that no condition or combination of conditions will reasonably assure the safety of any other person and the community shall be supported by clear and convincing evidence.").[4] "'Clear and convincing evidence' means the measure or degree of proof that produces a firm belief or conviction of the truth of the allegations sought to be established." *L & C Consultants, LLC v. Ash Petroleum, Inc.*, 2009 WL 3110200, at *3 n.3 (N.D. Tex. Sept. 29, 2009) (Fitzwater, C.J.), *aff'd*, 464 Fed. Appx. 199 (5th Cir. 2010).

---

[4]The court would apply a preponderance of the evidence standard if deciding whether Daniels is a flight risk. *See Fortna*, 769 F.2d at 249 ("[T]he judicial officer making [a determination as to flight risk should apply the simple preponderance standard."). The court is not, however, ordering him detained on this basis.

18 U.S.C. § 3142(g) prescribes the factors that the court must consider when determining whether there is a condition or combination of conditions that will reasonably assure the safety of any other person and the community:

> (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;
>
> (2) the weight of the evidence against the person;
>
> (3) the history and characteristics of the person, including—
>
> (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
>
> (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State or local law; and
>
> (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

### III

#### A

The government maintains that no condition or combination of conditions can assure that Daniels will not be a danger to the community if released. It contends that the number of firearms, ammunition, and the fact that they were unsecured when found, demonstrate

Daniels' dangerousness. The government also posits that Daniels knew his prior conviction prohibited him from owning firearms. Regarding Daniels' character, the government contends that his prior arrests and online anti-law enforcement postings make him "an unusually high threat to the community." Gov't Br. at 6.

Daniels maintains that the proof presented in the hearing does not satisfy the threshold of clear and convincing evidence of danger to the community; that the First Amendment bars the court from considering his online statements; and that, regardless of the court's analysis of the § 3142(g) factors, the court should order him released pending the resolution of his pending motion to dismiss the indictment.

B

Following *de novo* review of the detention hearing, and having considered the statutory factors under § 3142(g)(1)-(4), the court finds that the government has proved by clear and convincing evidence that there is no condition or combination of conditions that the court can impose on Daniels that will reasonably assure the safety of any other person and the community.

1

The first § 3142(g) factor requires the court to examine the nature and the circumstances of the offense charged. Among the components of this factor, the court can consider whether Daniels is charged with a crime of violence and whether the crime involves a firearm.

The Tenth Circuit—the only court that appears to have addressed the issue—has held that § 922(g)(9) is a crime of violence under the definition of 18 U.S.C. § 3156(a)(4)(B).[5] *See United States v. Rogers*, 371 F.3d 1225, 1232 (10th Cir. 2004). As the panel explained:

> The dangerousness of guns and their adaptability to use in violent crime is why Congress has prohibited their possession by individuals subject to a domestic protection order or convicted of a misdemeanor crime of domestic violence. Without possession of guns such persons are far less capable of committing acts of violence. Furthermore, the prohibitions set out in § 922(g)(8) and (9) seek to protect society in general, and the intimate partners of persons with a background of domestic violence in particular, by reducing the risk of violence that may result from the possession of guns by persons with a proven propensity for violence.

*Id.* at 1229 (quoting *United States v. Dillard*, 214 F.3d 88, 93 (2d Cir. 2000)) (internal quotation marks omitted). Indeed, "the underlying actions leading to the prohibitions in [§ 922(g)(9)] necessarily involve actual violence or credible threats of violence." *Id.* at 1230. The court concludes that Daniels is charged with a crime of violence within the meaning of § 3142(g)(1).[6]

---

[5] 18 U.S.C. § 3156(a)(4)(B) states that a crime of violence is "any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense[.]"

[6] Although the Fifth Circuit has not addressed this issue, the majority of courts follow a categorical approach when determining whether a crime is a crime of violence under the Bail Reform Act. *See United States v. Singleton*, 182 F.3d 7, 10-11 (D.C. Cir. 1999) (collecting cases). And as the Tenth Circuit explained in *Rogers*, "the use of the term 'by its nature' in 3156(a)(4)(B) mandates a categorical approach to the determination of whether a given crime fits within 3156(a)(4)(B)'s definition of crime of violence." *Rogers*, 371 F.3d at 1228 n.5.

Regardless whether a violation of § 922(g)(9) qualifies under § 3142(g)(1) as a crime of violence, it is by definition a crime that involves a firearm. The evidence demonstrates that Daniels knew he was prohibited from owning firearms. Despite this knowledge, FBI agents seized a handgun and an assault rifle from his bedroom, together with body armor and dozens of rounds of ammunition. These facts in particular undermine the potential effectiveness of any conditions the court could impose. Any prohibition against possessing a firearm would simply mirror the existing restriction that already applies to Daniels—the very one the government alleges he violated. Additional conditions, such as electronic monitoring, would be "insufficient to assure others' safety, since electronic monitoring informs pre-trial services where [the defendant] is, not what he is doing." *United States v. Whitman*, 514 F.Supp.2d 101, 104 (D. Me. 2007). The court therefore finds that the first § 3142(g) factor strongly favors detaining Daniels without bail.

2

The second § 3142(g) factor considers the weight of the evidence. Among the factors, "courts have found this factor to be of the least importance in the detention termination." *United States v. Akamnonu*, 2012 WL 1466557, at *2 (N.D. Tex. 2012) (Lindsay, J.) (citing *United States v. Stanford*, 630 F.Supp.2d 751, 755 (S.D. Tex. 2009); *United States v. Winsor*, 785 F.2d 755, 757 (9th Cir. 1986); *United States v. Barnett*, 986 F. Supp. 385, 393 (W.D. La.1997)). Still, the government presented evidence that Daniels had a domestic assault conviction in Tennessee, and that the judgment for that conviction advised

Daniels that he was prohibited from owning a firearm. Both testimony and exhibits support the finding that Daniels possessed a handgun at least since last November, when he flew to Detroit. The search of Daniels' apartment on December 12, 2017 also led to the discovery of the .38 caliber handgun and Norinco AK-style assault rifle. The weight of the evidence supports detention, at least when considered in combination with the other statutory factors.

3

The third § 3142(g) factor concerns Daniels' "history and characteristics," including, *inter alia*, his "character, physical and mental condition, . . . criminal history, and record concerning appearance at court proceedings[.]" 18 U.S.C. § 3142(g)(3)(A). The hearing evidence demonstrates Daniels' criminal history of repeated violent offenses. His pretrial services report reveals three arrests for domestic assault—including the predicate for the instant offense—and an additional arrest for aggravated assault for which Daniels failed to appear. Daniels maintains that his criminal record "is far less serious than that of the large majority of [§] 922(g) defendants who have secured pretrial bond." D. Br. 3 n.2. But even if this assertion is correct, the comparison of § 922(g) offenders generally with an alleged § 922(g)(9) offender lacks analytical precision. This is so because not all § 922(g) offenses require a history of violence, as does a § 922(g)(9) offense. *See Rogers*, 371 F.3d at 1229-30 (finding that § 922(g)(1), possession of a weapon by a felon, does not indicate the same "substantial" increased risk of future violence that § 922(g)(9) does). And even if a comparison of release statistics for § 922(g) offenses generally with § 922(g)(9) offenses

were considered apt, this factor is but one of several that the court considers under § 3142(g).

In addition to Daniels' criminal history, the evidence also demonstrated his years of publicly praising acts of violence against law enforcement. And although Daniels is correct that there is no evidence that his statements ever rose to the level of specific threats, the government did prove that Daniels has repeatedly applauded the deaths of police officers. The court therefore finds that the third factor supports detention.

4

These same facts pertain to the court's analysis of the fourth § 3142(g) factor, under which the court considers the nature and seriousness of the danger to any person or the community that would be posed by Daniels' release

The evidence of Daniels' praise of lethal violence, together with his apparent access to the means to perpetrate such violence, despite a judgment advising him that he was prohibited from owning a firearm, strongly supports the finding that he poses a grave danger to any person or the community. Like the other three factors, this factor too favors Daniels' detention.

Therefore, after analyzing each of the § 3142(g) factors, and considering them in combination, the court finds by clear and convincing evidence that no condition or combination of conditions will reasonably assure the safety of any other person and the community if Daniels is released pending trial.

C

Daniels maintains that the court should release him pending its ruling on his pending motion to dismiss the indictment. In that motion—to which the government's response is not yet due—Daniels challenges the legal sufficiency of the indictment. He cites no authority, and the court has found none, that would authorize the court to consider the merits of an unripe motion to dismiss and essentially decide to release him (even temporarily) without considering the § 3142(g) factors. Although Daniels has not identified a specific § 3142(g) factor to which the argument might be pertinent, there are two that the court deems potentially relevant: the first, which considers the nature and circumstances of the offense charged, and the second, which considers the weight of the evidence against the defendant. Neither, however, undermines the government's clear and convincing evidence that supports detaining Daniels as a safety risk.

Generally, merely challenging an indictment's legal sufficiency should not override detaining a defendant as a flight or safety risk when the required showing has been made. Indeed, if courts placed too much emphasis on challenges to the legal sufficiency of charged offenses when deciding whether to release defendants on conditions, all defendants who opposed detention would have an incentive to move to dismiss the indictment, regardless of the motion's merits. Therefore, the court concludes that Daniels' pending motion to dismiss in insufficient to overcome the clear and convincing evidence that supports detaining him as a safety risk.

D

Daniels also contends that, because his Facebook posts fall short of what would be illegal threats, the First Amendment bars using them as a basis for pretrial detention. The court disagrees.

"[T]he First Amendment 'does not prohibit the evidentiary use of speech to establish the elements of a crime or to prove motive or intent.'" *United States v. Cannon*, 750 F.3d 492, 508 (5th Cir. 2014) (quoting *Wisconsin v. Mitchell*, 508 U.S. 476, 489 (1993)). Accordingly, multiple courts have relied on a defendant's statements in concluding that the defendant should be detained pending trial. *See, e.g.*, *United States v. Ervin*, 818 F.Supp.2d 1314, 1317-18 (M.D. Ala. 2011) (citing defendant's statements in assessing risk of flight); *United States v. Mehanna*, 669 F.Supp.2d 160, 165 (D. Mass. 2009) (detaining defendant in part due to his online statements promoting terrorist activities and holding "[t]his ruling presents no First Amendment concerns"); *United States v. Reiner*, 468 F.Supp.2d 393, 399 (E.D.N.Y. 2006) (finding defendant to be danger to community in part due to his role in creating stories depicting sexual violence toward children). As the *Ervin* court explained:

> the court does not seek merely to punish [the defendant] for his beliefs or statements about his beliefs. Rather, [the defendant] has made specific statements that call into question whether he will abide by the court's order to appear at trial; it is his conduct, or possible conduct, that is ultimately at issue, and his statements are relevant only to extent that they reflect on that conduct.

*Ervin*, 818 F.Supp.2d at 1317. Likewise, the court in its analysis has used Daniels'

statements in its assessment of his character and the nature of the danger he poses to the community—both factors that § 3142(g) directs courts to consider when making detention decisions.

IV

For the reasons explained, Daniels' January 24, 2018 motion appealing the magistrate judge's detention order is denied. The court orders that Daniels be held without bond pending trial as follows. He is committed to the custody of the Attorney General for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal. He is to be afforded reasonable opportunity for private consultation with his counsel. By order of this court, to be issued in the future, the person in charge of the corrections facility in which Daniels is confined is to deliver him to a United States Marshal for the purpose of appearing in connection with any court proceeding.

   **SO ORDERED**.

January 30, 2018.

                                                              SIDNEY A. FITZWATER
                                                             UNITED STATES DISTRICT JUDGE