**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | ) |
| | ) |
| **v.** | ) CRIMINAL CASE NO. 3:18-CR-005-D |
| | ) |
| **CHRISTOPHER MAURICE DANIELS** | ) |
| | ) |

**REPLY BRIEF IN SUPPORT OF THE MOTION TO DISMISS THE INDICTMENT**

Respectfully submitted,

JASON D. HAWKINS
Federal Public Defender
Northern District of Texas

*s/ Gabriela Vega*
M. GABRIELA VEGA
Assistant Federal Public Defender
Northern District of Texas
Texas Bar No. 24084014
525 Griffin Street, Suite 629
Dallas, Texas 75202
Phone (214) 767-2746
Fax (214) 767-2886
gabriela_vega@fd.org

Mr. Daniels moved to dismiss the indictment on the basis that his prior Tennessee conviction is not categorically a "misdemeanor crime of domestic violence." In short, Tennessee domestic assault proscribes conduct broader than what is covered under 18 U.S.C. § 921(a)(33)(A), namely, "intentionally or knowingly caus[ing] another to reasonably fear imminent bodily injury." TENN. CODE ANN. § 39-13-101(a)(2). For the following reasons, the government's attempts to show that Mr. Daniels was convicted under a qualifying portion of the statute, or alternatively that § 39-13-101(a)(2) meets the federal definition of a misdemeanor crime of domestic violence, fail.

## I.   ARGUMENT

### A.   Subsection 39-13-101(a)(2) is not a separate or divisible offense from (a)(1).

In the Fifth Circuit, "the question of divisibility . . . demands certainty." *United States v. Herrold*, --- F.3d ---, No. 14-11317, 2018 WL 948373, at *3 (5th Cir. Feb. 20, 2018) (en banc) (citing *Shepard v. United States*, 544 U.S. 13, 21 (2005)). If the government "leave[s] the question of divisibility inconclusive, the tie goes to the defendant." *Id.* That is precisely the outcome warranted here.

The government first contends that § 39-13-101 is divisible because "the premise of the entire [*Castleman*] opinion was that the specific statute Daniels was convicted of violating is divisible." Dkt. No. 27 at 4.[1] But "unexamined assumptions do not bind [a later] [c]ourt." *Harper v. Va. Dep't of Taxation*, 509 U.S. 86, 119 (1993). Even the government cites the portion in *Castleman* explicitly stating that the court "***need not decide*** whether a domestic assault conviction in Tennessee categorically constitutes a 'misdemeanor crime of domestic violence,' because the parties do not contest that § 39-13-101 is a 'divisible statute.'" Dkt. No. 27 at 3 (quoting *United*

---

[1] Pinpoint citations refer to the pagination of the original document (not the pagination that appears in the ECF heading).

1

*States v. Castleman*, 134 S. Ct. 1405, 1414 (2014)) (emphasis added). The decision therefore did not "squarely address" the divisibility question, and "this [C]ourt remains free to address [it] on the merits[.]" *Harper*, 509 U.S. at 118; *see also Webster v. Fall*, 266 U.S. 507, 511 (1925) ("Questions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedents.").

The government's arguments based on state law—the different punishments set forth in § 39-13-101, and the holding of *State v. Kirkland*, No. E201302243CCAR3CD, 2014 WL 6992117 (Tenn. Crim. App. Dec. 11, 2014)—fare no better. The fact that the statute authorizes a different (lower) punishment for violations of subsection (a)(3), but lumps together and authorizes the same punishment for violations of *both* subsections (a)(1) and (a)(2), at most illustrates that § 39-13-101(a)(3) is divisible from the first two subsections. Notably, it also strongly suggests that the first two subsections are *not* divisible. Thus, the end point of the analysis simply circles back to the starting point: a court cannot distinguish violations of subsections (a)(1) and (a)(2) using the modified categorical approach because the two subsections are not divisible. Mr. Daniels's primary challenge to the alleged predicate conviction therefore still stands.

Furthermore, *Kirkland* is an unpublished decision from a Tennessee appellate court, which addresses a double jeopardy challenge to dual assault convictions stemming from what the defendant argued was a single continuous event. *See* 2014 WL 6992117, at *2–*4. "[T]he Supreme Court" in *Mathis v. United States*, 136 S. Ct. 2243 (2016), however, "did not list double jeopardy cases when it outlined sources of state law that could answer the question of a statute's divisibility with sufficient certainty." *Herrold*, 2018 WL 948373, at *7. This is because "statutory distinctions made by state courts in a double jeopardy analysis do not automatically inform the divisibility analysis;" and as such, "double jeopardy cases" typically "shed little light on divisibility." *Herrold*,

2

2018 WL 948373, at *3. Like the Supreme Court in *Mathis* and the Fifth Circuit in *Herrold*, this Court too should reject the government's attempt to establish the divisibility of the Tennessee assault statute on the basis of double jeopardy caselaw.

**B.  Even if the Tennessee statute were fully divisible, the Government cannot narrow Mr. Daniels's prior conviction to a qualifying subsection on this record.**

"[T]he modified approach . . . helps effectuate the categorical analysis when a divisible statute, listing potential offense elements in the alternative, renders opaque which element played a part in the defendant's conviction." *Descamps v. United States*, 570 U.S. 254, 260 (2013). Left unrestrained, this analytical method risks the introduction of the same "practical difficulties and potential unfairness of a factual approach," which the Supreme Court in *Taylor v. United States*, 495 U.S. 575, 601 (1990), rejected as too "daunting". The construction of the approach—and particularly its limits—honors the need to "avoid[] collateral trials . . . [by] confin[ing the inquiry] to records of the convicting court approaching the certainty of the record of conviction in a generic crime State." *Shepard*, 544 U.S. at 20, 23. Where the prior conviction resulted from a guilty plea, such records are: the "charging document, written plea agreement, transcript of plea colloquy, and any explicit factual finding by the trial judge to which the defendant assented." *Shepard*, 544 U.S. at 16; *see also Castleman*, 134 S. Ct. at 1414–15 (applying *Shepard* to inquiry concerning whether prior conviction constitutes a misdemeanor crime of domestic violence).

**1.  The affidavit of complaint may not be consulted under *Shepard* because it is not a charging document.**

In considering what records sufficiently met "*Taylor*'s demand for certainty," 544 U.S. at 21, the *Shepard* court explicitly rejected the use of "reports submitted by the police with applications for issuance of the complaints, as a way of telling whether [the defendant's] guilty pleas went to [the relevant federal] generic [offense] notwithstanding . . . the more expansive [offense] definition[s] in [state] law," *id.* at 17. Like the police reports and complaint applications

3

disallowed in *Shepard*, Tennessee "affidavits of complaint are not appropriate *Shepard* documents." *United States v. Moore*, 578 F. App'x 550, 553 (6th Cir. 2014) (citing *Shepard*, 544 U.S. at 16).

Presumably in an effort to shoe-horn the affidavit of complaint into the category of records permissible under *Shepard*, the government attempts to recast it as a "charging document." *See* Dkt. No. 27 at 7–8. In Tennessee, the default rule is that "[n]o person shall be put to answer any criminal charge, but by presentment, indictment or impeachment[.]" TENN. CODE ANN. § 40-3-101. "[W]ith the consent of the accused and the accused's attorney and of the court," the right to presentment and indictment may be waived, allowing the prosecution to continue "upon the filing of an information." *Id.* § 40-3-103. Obviously, an affidavit of complaint is neither indictment nor information. Moreover, whereas a true indictment or information contains only material facts and utilizes statutory language to allege a particular offense, the affidavit of complaint here contains statements by witnesses, which are replete with nonmaterial facts, and fails to specify the particular offense alleged.[2] *C.f. Castleman*, 134 S. Ct. at 1414 ("consulting *the indictment* to which Castleman pleaded guilty," which alleged in precise statutory terms that the defendant "intentionally or knowingly cause[d] bodily injury" to the victim) (emphasis added).

It also fails to convincingly argue that the affidavit of complaint is a "charging document"[3] or otherwise permissible under *Shepard*. The government cites *United States v. Jones*, 453 F.3d 777 (6th Cir. 2006), *see* Dkt. No. 27 at 7 n.3; but fails to trace how the Sixth Circuit later cabined *Jones* to "the limited inquiry of whether prior offenses constitute a single criminal episode or multiple episodes[.]" *United States v. Wells*, 473 F.3d 640, 647 n.5 (6th Cir. 2007). "*Jones* did ***not***

---

[2] The only other document aside from the judgment that actually contains a cognizable "charge" of any sort is the arrest warrant.

[3] At least with respect to the question of when a prosecution commences, the filing of an affidavit of complaint does not effectively toll the limitations period. *See State v. McCloud*, 310 S.W.3d 851, 859–60 (Tenn. Crim. App. 2009).

4

*address . . . whether a sentencing court may rely on an affidavit of complaint to determine what kind of conduct a defendant necessarily admitted in pleading guilty*." *United States v. Medina-Almaguer*, 559 F.3d 420, 424 (6th Cir. 2009) (emphasis added). *Moore*, by contrast, did—and carefully applying *Jones*, *Medina-Almaguer*, and *Wells,* unequivocally concluded that these affidavits may not be used to narrow an overbroad offense under the modified categorical approach. Thus, the most direct treatment of this issue by a federal appellate court—and presumably the one with the most expertise in examining prior convictions from Tennessee—directly contradicts the government's position.

> **2. The remaining documents in the record likewise fail to establish that Mr. Daniels's conviction was secured under § 39-13-101(a)(1).**

The government additionally argues that the waiver and plea, order of accepting plea of guilty, and judgment demonstrate that Mr. Daniels's conviction qualifies as a misdemeanor crime of domestic violence because: (1) the judgment reflects a sentence of eleven months and twenty-nine days; (2) the judge allegedly advised Mr. Daniels that he was not allowed to possess a firearm; and (3) Mr. Daniels admitted to a "factual basis for his plea." *See* Dkt. No. 27 at 7–9. None of these statements, however, correspond to any element of "assault" as defined in Tennessee, and as such they do not constitute relevant "findings of fact adopted by the defendant upon entering the plea," *Shepard*, 544 U.S. at 20. Furthermore, even if the length of the sentence excluded § 39-13-101(a)(3), the government admits that such method does not exclude § 39-13-101(a)(2); consequently, the conviction would still suffer from the same infirmity at the heart of the defense's motion. Additionally, it is unclear from the face of the judgment what the extraneous statement concerning the possession of firearms actually represents. The judgment indicates that at least a portion of the sentence was suspended, and the statement is handwritten immediately above Mr. Daniels's report date—both could very well (and likely do) refer to

5

conditions of probations. At the very least, this lack of clarity precludes the statement from providing sufficient certainty for this Court to rely on it for purposes of narrowing the offense of conviction.

Lastly, that the waiver and plea provides that "there is a factual basis for the plea" is at most a circular argument. The waiver and plea does not specify the facts supporting the conviction, nor does it reference any other document in the record. As such, this waiver and plea is distinguishable from the record before the court *United States v. Conde-Castaneda*, 753 F.3d 172 (5th Cir. 2014), which the government cites in support. *See* Exs. A & B to Unopposed Mot. to Supplement the Record at 4, *United States v. Conde-Castaneda*, 753 F.3d 172 (5th Cir. 2014) (No. 13-10590) (record contained indictment and judicial confession, which stated that "[a]ll facts alleged in the indictment or information are true and correct."). By contrast, the government produced no indictment here; the record only indicates that Mr. Daniels pleaded guilty simply to the generalized charge of "Domestic Assault."

**C.    The government improperly privileges a presumed legislative purpose over a statute's plain language.**

**1.    Statutory purpose is subordinate and secondary to the statutory text.**

Citing *Castleman*, *Voisine v. United States*, 136 S. Ct. 2272 (2016), and *United States v. Hayes*, 555 U.S. 415 (2009), the government claims that Supreme Court precedent "emphasize[s] the purpose of Section 922(g)(9) and broadly interpret[s] the definition of 'misdemeanor crime of domestic violence' to effectuate that purpose." *See* Dkt. No. 27 at 11–14. Here, however, the government would have this Court broadly interpret § 921(a)(33)(A) to sweep in offenses that criminalize threats resulting in another's reasonable fear of imminent bodily injury, without regard to whether such offenses involve a deadly weapon. This amounts to a request for this Court to

6

judicially rewrite the statute, striking "a deadly weapon" and substituting in "physical force" in § 921(a)(33)(A). As such, it is untenable.

"The starting point in discerning congressional intent is the existing statutory text . . . ." *United States v. Kaluza*, 780 F.3d 647, 658 (5th Cir. 2015) (quoting *Lamie v. U.S. Trustee*, 540 U.S. 526, 534 (2004)). "When faced with questions of statutory construction," the first step is always the statutory text: where the text is "plain and unambiguous," the court "must apply the statute according to its terms.'" *Id.* (quoting *Carcieri v. Salazar*, 555 U.S. 379, 387 (2009)). Moreover, "there is no doubt" that "[o]nly . . . after a conclusion that the statute is ambiguous may the court turn to the legislative history." *Id.* "For the language to be considered ambiguous . . . it must be susceptible to more than one reasonable interpretation or more than one accepted meaning." *Id.* at 658–59 (quoting *Carrieri*, 393 F.3d at 518–19).[4]

In fact, the Supreme Court precedent cited by the government rigorously follows this method of statutory interpretation. In *Hayes* and *Voisine*, the entire first half of the court's analysis focuses on the statutory text. *See Hayes*, 555 U.S. at 421–26 (noting "as an initial matter that § 921(a)(33)(A) uses the word 'element' in the singular" and that "[t]reating the relationship between aggressor and victim as an element of the predicate offense is also awkward as a matter of syntax"); *Voisine*, 136 S. Ct. at 2278–80 (observing first that "[n]othing in the word 'use'— which is the only statutory language either party thinks relevant—indicates that § 922(g)(9) applies exclusively to knowing or intentional domestic assaults," and later concluding that "[s]tatutory

---

[4] Even if the statute's text could be construed as ambiguous (which the defense maintains is not possible), the rule of lenity compels a narrow interpretation here. *See* Tr. of Sentencing 11:25–16:2, *United States v. Harrimon*, No. 7:07-CR-17-D (N.D. Tex. June 13, 2008) (Fitzwater, J.). In *Harrimon*, this Court observed that where "there are strong arguments on both sides" regarding whether a sentence could be enhanced based on a prior conviction, the matter "call[ed] for application of the rule of lenity." *Id.* 12:1–12:6. This reasoning applies with even more force here, where *culpability* (not just the sentence) relies on the prior conviction.

7

text and background alike" demonstrate "that a reckless domestic assault qualifies as a 'misdemeanor crime of domestic violence' under § 922(g)(9).").[5]

The statutory text was likewise primary in *Castleman* and *Johnson v. United States*, 559 U.S. 133 (2010). *See Castleman*, 134 S. Ct. at 1410 (addressing whether the holding in *Johnson* extended to § 921(a)(33)(A)). The *Johnson* court, in interpreting "physical force" as used in 18 U.S.C. § 924(e)(2)(B)(i), first noted that "'physical force' lacked a statutorily defined meaning." 559 U.S. at 138. Finding no further guidance from the statutory text, the court turned to consider the phrase's plain and common-law meanings. *Id.* at 138–40. Although *Castleman* ultimately departed from *Johnson* insofar as it concluded that the context present in § 921(a)(33)(A) supported the common law meaning, *see id.* at 1411–13, which the *Johnson* court had rejected for purposes of § 924(e)(2)(B)(i), *see* 559 U.S. at 139–42, the starting point of the analysis—the statutory text—remained the same.

2. **The government improperly elevates one senator's intent above the intent of Congress as evidenced by the statutory text.**

The use of legislative history has been likened to "the equivalent of entering a crowded cocktail party and looking over the heads of the guests for one's friends." *Nalle v. C.I.R.*, 997 F.2d 1134, 1137 (5th Cir. 1993) (quoting *Conroy v. Aniskoff*, 507 U.S. 511 (1993)). The government's reliance on Senator Lautenberg's statements is a quintessential example of this fallacy. The government may agree that "anyone who . . . threatens violence against a loved one . . . should be prohibited from possessing firearms," Dkt. No. 27 at 18 (quoting 142 Cong. Rec. S11872–01, S11877), but that is not what Congress decided. Rather, § 921(a)(33)(A) reflects a congressional decision to restrict the availability of firearms to individuals who, based on prior convictions, had

---

[5] The government discusses *Voisine* at length, even though the prong of Tennessee domestic assault highlighted in the defense's motion requires a more culpable *mens rea* than recklessness. For this reason, the discussion of *Voisine* and it progeny is at most a red herring.

8

in the past used or attempted to use physical force, or threatened to use *a deadly weapon*, within the context of a domestic relationship. If a simple threatened use of physical force sufficed in the eyes of the collective body, Congress would have statutorily defined qualifying convictions to include convictions for offenses that had as an element the threatened use of physical force. Notably, Congress did precisely that in other contexts. *See* Dkt. No. 21 at 3.

### 3. The Tennessee legislature's judgment regarding what conduct warrants greater or lesser punishment is irrelevant.

The government further argues that strictly adhering to the statutory text would invert the judgment of the Tennessee legislature regarding the severity of certain offenses. The issue before the Court, however, is not what the Tennessee legislature considers more or less culpable conduct—the issue is the class of persons who Congress intended to prohibit from possessing firearms. How Tennessee decides to punish different categories of conduct is not germane to this issue of federal law. *Cf. Johnson*, 559 U.S. at 138 (rejecting as unpersuasive a state supreme court's interpretation of a state law, which was identical to the federal statute under consideration, because the issue was "a question of federal law, not state law.").

### D. The government fails to prove that an assault under § 39-13-101(a)(2) is a misdemeanor crime of domestic violence.

Lastly, the government contends that "gritted teeth and a clenched fist," as well as "pumping a fist in an angry manner," are uses of physical force. *See* Dkt. No. 27 at 15. "[P]hysical," however, "plainly refers to force exerted by and through concrete bodies[.]" *Johnson*, 559 U.S. at 138. The fact that "'even its indirect application" suffices, *see Castleman*, 134 S. Ct. at 1414, does not support a conclusion that *no application*—as is the case with gritted teeth and a clenched fist—suffices. The Eighth Circuit's decision in *United States v. Horse Looking*, 828 F.3d 744 (8th Cir. 2016), confirms this reasoning. The government attempts to

9

distinguish *Horse Looking* on the basis that a different state's statute was at issue,[6] but a side-by-side comparison of the two offenses belies any attempt to draw a meaningful distinction:

| "A person commits assault who:<br>. . .<br>(2) Intentionally or knowingly causes another to reasonably fear imminent bodily injury."<br><br>Tenn. Code Ann. § 39-13-101(a)(2). | "Any person who:<br>. . .<br>(4) Attempts by physical menace or credible threat to put another in fear of imminent bodily harm, with or without the actual ability to harm the other person<br>. . .<br>is guilty of simple assault."<br><br>S.D. Codified Laws § 22-18-1[7] |
|---|---|

In sum, whatever "force" gritted teeth and a clenched fist can be said to exert is precisely what *Johnson* unequivocally stated was *not* physical force: "intellectual force or emotional force." 559 U.S. at 138.  The very conduct that other courts have found to amount to § 39-13-101(a)(2) assault, therefore, is not "physical force" per Supreme Court precedent.

## II.    CONCLUSION

In sum, this Court should dismiss the indictment because the government cannot, as a matter of law, prove an essential element of a § 922(g)(9) offense; namely, that Mr. Daniels was convicted of an offense that has as an element the use or attempted use of physical force, or the threatened use of a deadly weapon.

---

[6] The government's further argument that this Court should not rely on *Horse Looking* because it cited precedent is nonsensical. The fact that *Horse Looking* came after *United States v. Smith*, 171 F.3d 617 (8th Cir. 1999), illustrates a continuity of thought, not a lack of analysis. *See Horse Looking*, 828 F.3d at 747 (citing *Smith*, 171 F.3d at 620, as "holding that a statute forbidding '[a]ny act which is intended to place another in fear of immediate physical contact which will be painful, injurious, insulting, or offensive' did not have, as an element, the use or attempted use of force.").

[7] Nevertheless, the South Dakota statute is arguably narrower than the statute in Tennessee. Whereas the Tennessee statute sweeps in *any* intentional or knowing conduct that results in another's reasonable fear of imminent bodily injury, South Dakota's only proscribes such conduct when it constitutes a "physical menace" or a "credible threat."

           Respectfully submitted,

           JASON D. HAWKINS
           Federal Public Defender
           Northern District of Texas

           *s/ Gabriela Vega*
           M. GABRIELA VEGA
           Assistant Federal Public Defender
           Northern District of Texas
           Texas Bar No. 24084014
           525 Griffin Street, Suite 629
           Dallas, Texas 75202
           Phone (214) 767-2746
           Fax (214) 767-2886
           gabriela_vega@fd.org

## CERTIFICATE OF SERVICE

I hereby certify that on February 23, 2018, I electronically filed the foregoing document using the ECF system of the U.S. District Court, Northern District of Texas. Per L. Crim. R. 49.2(e), delivery of the automatically generated ECF notice constitutes service under Fed. R. Crim. P. 49(b) on the following attorneys of record:

| Jennifer Tourje | John J de la Garza, III | Leigha A Simonton |
|---|---|---|
| U.S. Attorney's Office | U.S. Attorney's Office | U.S. Attorney's Office |
| 1100 Commerce St. | 1100 Commerce St. | 1100 Commerce St. |
| Third Floor | Third Floor | Third Floor |
| Dallas, TX 75242 | Dallas, TX 75242 | Dallas, TX 75242 |
| (214) 659-8600 | 214-659-8682 | 214-659-8669 |
| Fax: (214) 767-4100 | Fax: 214-659-8803 | Fax: 214-659-8800 |
| jennifer.tourje@usdoj.gov | john.delagarza@usdoj.gov | leigha.simonton@usdoj.gov |

           *s/ Gabriela Vega*
           M. Gabriela Vega
           Assistant Federal Public Defender