IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

UNITED STATES OF AMERICA,          §
                                   §
                    Plaintiff,     §
                                   §     Criminal No. 3:18-CR-005-D
VS.                                §
                                   §
CHRISTOPHER MAURICE DANIELS,        §
                                   §
                    Defendant.     §

MEMORANDUM OPINION
AND ORDER

The principal question presented by defendant's motion to dismiss the indictment is

whether, under the modified categorical approach, § 39-13-101(a)(2) of the Tennessee

assault statute, which is incorporated into the Tennessee domestic assault statute, "has, as an

element, the use or attempted use of physical force, or the threatened use of a deadly

weapon," as required to qualify as "a misdemeanor crime of domestic violence" under 18

U.S.C. § 922(g)(9). Concluding that the use or attempted use of physical force or the

threatened use of a deadly weapon is not a necessary element of a § 39-13-101(a)(2) offense,

the court grants defendant's motion and dismisses the indictment.

I

Defendant Christopher Maurice Daniels ("Daniels") is charged in a one-count

indictment with the offense of possession of a firearm by a prohibited person, in violation

of 18 U.S.C. §§ 922(g)(9) and 924(a)(2).[1]  According to the indictment, Daniels committed this offense when he possessed two firearms after having been convicted of "domestic assault" under Tennessee law, which the indictment alleges is "a misdemeanor crime of domestic violence."

Daniels moves to dismiss the indictment, contending that, as a matter of law, his Tennessee conviction does not qualify as "a misdemeanor crime of domestic violence" and therefore that he cannot be guilty of violating § 922(g)(9).  He maintains that "domestic assault" in Tennessee does not categorically constitute a "misdemeanor crime of domestic violence" under federal law because it encompasses conduct broader than the federal definition.  Daniels posits that § 39-13-109(a)(2)—which makes it a crime in Tennessee to "[i]ntentionally or knowingly cause[] another to reasonably fear imminent bodily injury"—does not necessarily require the use or attempted use of physical force, or the threatened use of a deadly weapon; that the government cannot narrow the Tennessee domestic assault statute to a qualifying subsection because the statute is not divisible into distinct offenses; and that, even if the statute is divisible, the government cannot narrow Daniels' conviction on the record presented.

The government responds that Tennessee's domestic assault statute is divisible, and that state court documents demonstrate that Daniels was convicted under § 39-13-109(a)(1)—a prong of the statute that *United States v. Castleman*, 572 U.S. ___, 134

---

[1]18 U.S.C. § 924(a)(2) provides the penalty for violating 18 U.S.C. § 922(g)(9).  The indictment also contains a forfeiture notice.

S.Ct. 1405 (2014), held qualifies as a misdemeanor crime of domestic violence. Alternatively, the government maintains that all of the prongs of the Tennessee assault statute categorically qualify under the federal definition of "a misdemeanor crime of domestic violence."

## II

Although Daniels does not specify the rule under which he moves to dismiss the indictment, the motion is properly deemed a motion under Fed. R. Crim. P. 12(b)(3)(B)(v) to dismiss the indictment for failure to state an offense. "[A] motion to dismiss an indictment for failure to state an offense is a challenge to the sufficiency of the indictment." *United States v. Kay*, 359 F.3d 738, 742 (5th Cir. 2004). When the court decides such a motion, it is required to "'take the allegations of the indictment as true and to determine whether an offense has been stated.'" *Id.* (quoting *United States v. Hogue*, 132 F.3d 1087, 1089 (5th Cir. 1998)). "The propriety of granting a motion to dismiss an indictment . . . by pretrial motion is by-and-large contingent upon whether the infirmity in the prosecution is essentially one of law or involves determinations of fact . . . . If a question of law is involved, then consideration of the motion is generally proper." *United States v. Fontenot*, 665 F.3d 640, 644 (5th Cir. 2011) (internal citation omitted). The parties do not dispute that Daniels' motion to dismiss presents a question of law. And although the government opposes the motion, it does not maintain that the motion is procedurally improper.

III

A

Section 922(g)(9) of Title 18, *inter alia*, makes it "unlawful for any person . . . who has been convicted in any court of a misdemeanor crime of domestic violence, to . . . possess in or affecting commerce, any firearm[.]"  18 U.S.C. § 922(g)(9).  As used in § 922(g)(9), "misdemeanor crime of domestic violence"

> means an offense that—
>
> (i) is a misdemeanor under Federal, State, or Tribal law; and
>
> (ii) has, as an element, *the use or attempted use of physical force, or the threatened use of a deadly weapon*, committed by a current or former spouse, parent, or guardian of the victim, by a person with whom the victim shares a child in common, by a person who is cohabiting with or has cohabited with the victim as a spouse, parent, or guardian, or by a person similarly situated to a spouse, parent, or guardian of the victim.

18 U.S.C. § 921(a)(33)(A) (emphasis added).

The indictment alleges that Daniels was convicted of "Domestic Assault" under Tennessee Law.[2]  In Tennessee "[a] person commits domestic assault who commits an assault as defined in § 39-13-101 against a domestic abuse victim."  Tenn. Code Ann. § 39-13-111(b) (West 2018).  Section 39-13-101, in turn, provides:

---

[2]In its response to Daniels' motion to dismiss, the government has also produced *Shepard*-type documents that establish that Daniels pleaded guilty to the offense of "domestic assault" under Tennessee law.  *See generally Shepard v. United States*, 544 U.S. 13 (2005).

(a) A person commits assault who

(1) Intentionally, knowingly or recklessly causes bodily injury to another;

(2) Intentionally or knowingly causes another to reasonably fear imminent bodily injury; or

(3) Intentionally or knowingly causes physical contact with another and a reasonable person would regard the contact as extremely offensive or provocative.

Tenn. Code Ann. § 39-13-101 (West 2018). Tennessee law further defines "domestic abuse victim" as, *inter alia*, "[a]dults or minors who are current or former spouses; . . . live together or who have lived together; [or] . . . are dating or who have dated or who have or had a sexual relationship[.]" *Id.* at § 39-13-111(a)(1)-(3).

## B

When determining whether an underlying state criminal offense has the requisite "elements" to qualify as a predicate offense under a federal statute such as § 922(g)(9), and the state statute is alternatively phrased, the court "follow[s] the analytic approach of *Taylor v. United States*, 495 U.S. 575 (1990), and *Shepard v. United States*, 544 U.S. 13 (2005)." *Castleman*, 134 S.Ct. at 1413 (examining whether state offense qualified as "misdemeanor crime of domestic violence" under § 922(g)(9) in context of motion to dismiss indictment).[3]

_____

[3] *Taylor* and *Shepard* apply the categorical approach and modified categorical approach, respectively, in the context of identifying predicate offenses for sentencing enhancements under the Armed Career Criminal Act, 18 U.S.C. § 924(e). Because *Castleman* explicitly applies their approach when examining the legal sufficiency of a predicate offense for § 922(g)(9) in the context of a motion to dismiss an indictment, the court will rely on *Taylor*, *Shepard*, and their progeny to inform its application of the

Under this approach, the court "must determine whether the statute sets forth alternative means of committing a single substantive crime or separate elements, effectively defining distinct offenses." *United States v. Herrold*, 883 F.3d 517, 521 (5th Cir. 2018) (en banc) (citing *Mathis v. United States*, ___ U.S. ___, 136 S.Ct. 2243, 2249 (2016)). If the state statute prescribes alternate means of committing one offense, it is indivisible. The court follows *Taylor*'s categorical approach, under which it only "look[s] to the statute of [Daniels'] conviction to determine whether that conviction necessarily 'ha[d], as an element, the use or attempted use of physical force, or the threatened use of a deadly weapon.'" *Castleman*, 134 S.Ct. at 1413 (third brackets in original) (quoting 18 U.S.C. § 921(a)(33)(A)(ii)); *see also Herrold*, 883 F.3d at 521 ("[W]e compare the whole [state statute] to its federal generic counterpart and determine whether any part falls outside the federal template."). If the whole statute does not necessarily have such an element, the statute does not qualify as a predicate offense. If the categorical approach governed Daniels' case, the court would decide whether all three means of committing assault under § 39-13-101(a) necessarily have, as an element, "the use or attempted use of physical force, or the threatened use of a deadly weapon."

If, however, the state statute sets out separate elements, effectively defining distinct offenses, the statute is divisible. The court then applies the modified categorical approach, in which it "isolate[s] the alternative under which the defendant was convicted and appl[ies]

---

categorical and modified categorical approaches.

the federal template to only that alternative." *Herrold*, 883 F.3d at 522. In applying the modified categorical approach to determine the offense to which the defendant pleaded guilty, the court is "generally limited to examining the statutory definition, charging document, written plea agreement, transcript of plea colloquy, and any explicit factual finding by the trial judge to which the defendant assented." *Shepard*, 544 U.S. at 16; *see also Castleman*, 134 S. Ct. at 1414 (citing *Shepard*) (noting that the Court was "consulting the indictment to which [the defendant] pleaded guilty in order to determine whether his conviction did entail the elements necessary to constitute the generic federal offense."). In Daniels' case, if the court is able to isolate the provision of § 39-13-101(a) to which he pleaded guilty, then only that prong needs to have "as an element, the use or attempted use of physical force, or the threatened use of a deadly weapon" to qualify as "a misdemeanor crime of violence" under § 922(g)(9).

## IV

The court will assume *arguendo* that § 39-13-101(a)—the assault statute incorporated into the domestic assault offense——is divisible.[4] If the government cannot defeat Daniels' motion under the modified categorical approach and a divisible statute, *a fortiori* it cannot do so under the categorical approach and an indivisible statute. The court will therefore apply the modified categorical approach in an attempt to identify the § 39-13-101(a) offense of which Daniels was convicted.

---

[4]*Castleman* did not address whether § 39-13-101(a) is a divisible statute because the parties did not contest that it is. *Castleman*, 134 U.S. at 1414.

A

In applying the modified categorical approach to a state conviction resulting from a guilty plea, the court must determine whether the plea "necessarily admitted elements" that correspond to the generic federal offense. *Shepard*, 544 U.S. at 26; *see also Castleman*, 134 U.S. at 1414. Courts are generally "confined to records of the convicting court approaching the certainty of the record of conviction[.]" *Id.* at 23. These include "the terms of the charging document, the terms of a plea agreement or transcript of colloquy between judge and defendant in which the factual basis for the plea was confirmed by the defendant, or to some comparable judicial record of this information." *Id.* at 26. "The use of these documents is permitted because they are considered sufficiently conclusive and reliable to establish the facts to which the [defendant] actually pleaded guilty." *Larin-Ulloa v. Gonzales*, 462 F.3d 456, 464 (5th Cir. 2006); *see also United States v. Montanez-Trejo*, 708 Fed. Appx. 161, 167 (5th Cir. 2017) (per curiam).

The government contends that the *Shepard* documents demonstrate that Daniels was convicted under § 39-13-101(a)(1), which *Castleman* held is "a misdemeanor crime of domestic violence" under § 922(g)(9). It contends that the sentence Daniels received in the Tennessee court indicates that he was convicted under either § 39-13-101(a)(1) or (a)(2); the affidavit of complaint is a charging document under Tennessee law; the affidavit of complaint paraphrases the language of § 39-13-101(a)(1); and the waiver and plea also support the conclusion that Daniels pleaded guilty to § 39-13-101(a)(1).

Daniels maintains that the modified categorical approach does not allow the court to narrow his conviction to a qualifying subsection of § 39-13-101(a). He posits that the affidavit of complaint is neither a "charging document" nor any other document that the court may consult under *Shepard*; and that the remaining documents in the record fail to establish the particular prong of § 39-13-101(a) underlying his conviction for domestic assault.

B

The fundamental inquiry that the *Shepard* documents seek to answer is whether the plea necessarily admitted the elements that fit the federal definition. *Shepard*, 544 U.S. at 26. Here, Daniels' plea agreement—a form completed by the sentencing judge—and arrest warrant state that Daniels was charged with and pleaded guilty to "the offense of Domestic Assault"; neither specifies the particular statutory section or subsection. The judgment does provide that Daniels was sentenced to serve 11 months and 29 days, the maximum sentence for a Tennessee class A misdemeanor. *See* Tenn. Code Ann. §§ 39-13-101(b)(1)(A) and 40-35-111(e)(1). Therefore, the court can conclude from the *Shepard* documents that Daniels did not plead guilty to a violation of § 39-13-101(a)(3), which is a class B misdemeanor. *See* § 39-13-101(b)(1).

Beyond that, however, the modified categorical approach does not enable the court to determine whether Daniels pleaded guilty to a violation of § 39-13-101(a)(1) or § 39-13-101(a)(2). In the written "Waiver and Plea," Daniels admitted that he was advised

and understood "[t]he fact that there must be facts to support the plea"; that "the facts which he knows to exist equal the elements of the charge(s)"; and "that there is a factual basis for his plea." ECF No. 27-1 at 1. In the court's "Order of Accepting Plea of Guilty," it further stated that "the Court concludes that there is a factual basis for the defendant's plea of guilty." *Id.* at 2. At no point, however, does the document state the factual basis for the plea, the facts to which Daniels stipulated, or which prong of the assault statute constituted "domestic assault." Daniels' admission that "the facts . . . equal the elements of the charge(s)" is of no aid when multiple sets of elements could constitute the underlying "domestic assault" offense.

The government contends that the "Affidavit of Complaint"—a sworn statement from the arresting officer that accompanied the arrest warrant—can provide the factual basis for the plea. Fifth Circuit precedent demonstrates, however, why the "Affidavit of Complaint" does not shed light on what elements Daniels necessarily admitted to support his conviction. In *United States v. Castillo-Morales*, 507 F.3d 873 (5th Cir. 2007), the panel held that the district court properly relied on facts found in a charging affidavit to determine the offense to which the defendant had pleaded guilty. *Id.* at 877. But it did not hold that the charging affidavit was a proper *Shepard* document outright. Instead, the panel concluded that, during the plea colloquy, the defendant specifically stipulated to facts "based on 'documents in the court file, including the complaint affidavit.'" *Id.* at 875. Therefore, the defendant had admitted to specific facts that supported the necessary elements of the federal generic

offense.  Daniels' plea, by contrast, acknowledges the existence of facts generally, but not specific facts that would support a particular prong of § 39-313-101(a).  Therefore, the "Affidavit of Complaint" does not assist in the *Shepard* inquiry here.

The government also maintains that the "Affidavit of Complaint" is a "charging document" under *Shepard*, and may therefore be examined under the modified categorical approach regardless of the contents of the plea agreement.  The court disagrees.

In Tennessee, an affidavit of complaint is "a statement alleging that a person has committed an offense."  Tenn. R. Crim. P. 3 (West 2018).  It must be in writing, made under oath before a magistrate, and allege the essential facts constituting the offense charged.  *Id.* "If the magistrate is satisfied from the written examination that there is probable cause to believe the offense complained of has been committed and that there is probable cause to believe the defendant has committed it, then the magistrate shall issue an arrest warrant." Tenn. Code Ann. § 40-6-205(a); *see also* Tenn. R. Crim. P. 4(a).  The prosecution officially commences when the magistrate issues the arrest warrant.  Tenn. Code Ann. § 40-2-104.

 Tennessee case law holds that the affidavit of complaint alone is not a "charging instrument."  *See State v. Shell*, 512 S.W.3d 267, 272 (Tenn. Crim. App. 2016); *see also State v. McCloud*, 310 S.W.3d 851, 860 (Tenn. Crim. App. 2009).  As these cases explain, § 40-2-104[5] provides an exclusive and exhaustive list of ways that a prosecution can

---

[5]Section 40-2-104 provides:

> A prosecution is commenced, within the meaning of this chapter, by finding an indictment or presentment, the issuing of

commence. *State v. Burdick*, 395 S.W.3d 120, 124 (Tenn. 2012); *State v. Tait*, 114 S.W.3d 518, 522 (Tenn. 2003). The specified methods are "all deemed to provide the defendant with sufficient notice of the crime." *State v. Ferrante*, 269 S.W.3d 908, 914 (Tenn. 2008) (quoting *Tait*, 114 S.W.3d at 914). Filing an affidavit of complaint is not one of them. The court therefore declines to consider the "Affidavit of Complaint" in Daniels' case as a charging document.

The government posits that, even if a Tennessee affidavit of complaint is not a charging document, it still qualifies as a *Shepard* document generally. The government primarily cites *United States v. Jones*, 453 F.3d 777 (6th Cir. 2006). In *Jones* a Sixth Circuit panel held that "[a]n affidavit of complaint is a type of record that a district court can properly rely on in determining the nature of predicate offenses, consistent with the standards of *Shepard*." *Id.* at 780. *Jones* specifically used affidavits of complaint to determine whether the defendant's prior convictions amounted to one criminal episode or three. *See id.* at 780-81. But this court's prior analysis demonstrates why the "Affidavit of

a warrant, the issuing of a juvenile petition alleging a delinquent act, binding over the offender, by the filing of an information as provided for in chapter 3 of this title, or by making an appearance in person or through counsel in general sessions or any municipal court for the purpose of continuing the matter or any other appearance in either court for any purpose involving the offense. A prosecution is also commenced, within the meaning of this chapter, by finding an indictment or presentment or the issuing of a warrant identifying the offender by a deoxyribonucleic acid (DNA) profile.

Tenn. Code Ann. § 40-2-104 (West 2018).

Complaint" in Daniels' case does not identify the elements or facts that he necessarily admitted, which is *Shepard*'s fundamental inquiry. Moreover, *Jones* does not appear to be controlling in the Sixth Circuit on the issue pertinent to Daniels' case.

Less than one year after *Jones* was decided, a panel in *United States v. Wells*, 473 F.3d 640 (6th Cir. 2007), noted that *Jones*'s holding "involved only the limited inquiry of whether prior offenses constitute a single criminal episode or multiple episodes, an inquiry especially suited to resolution by reference to a criminal complaint." *Id.* at 647 n.5. Subsequent cases explicitly state that "*Jones* did not address—it had no occasion to address—whether a sentencing court may rely on an affidavit of complaint to determine what kind of conduct a defendant necessarily admitted in pleading guilty." *United States v. Medina-Almaguer*, 559 F.3d 420, 424 (6th Cir. 2009). The court therefore concludes that the "Affidavit of Complaint" in Daniels' case is not an appropriate *Shepard* document on its own.

As in *Shepard*, "[i]n this particular pleaded case, the record is silent on the generic element[s], there being no plea agreement or recorded colloquy in which [Daniels] admitted the generic fact[s]." *Shepard*, 544 U.S. at 25. The court holds under the modified categorical approach that Daniels did not plead guilty to domestic assault under § 39-13-101(a)(3). That alternative is a Class B a misdemeanor, and Daniels was sentenced for a Class A misdemeanor. But the court is unable to determine whether Daniels was convicted under § 39-13-101(a)(1) or § 39-13-101(a)(2) because the properly-considered

*Shepard* documents do not provide the answer.

V

Because the modified categorical approach does not identify the prong of the Tennessee assault statute of which Daniels was convicted, the court must decide whether both § 39-13-101(a)(1) and (a)(2) "have, as an element, the use or attempted use of physical force, or the threatened use of a deadly weapon." *Castleman* establishes that § 39-13-101(a)(1) qualifies as "a misdemeanor crime of domestic violence" under § 922(g)(9). *Castleman*, 134 S.Ct. at 1408. The court therefore focuses on § 39-13-101(a)(2) alone.

A

The court "look[s] to the statute of [Daniels'] conviction to determine whether that conviction necessarily 'ha[d], as an element, the use or attempted use of physical force, or the threatened use of a deadly weapon.'" *Castleman*, 134 S.Ct. at 1413 (2014) (third brackets in original) (quoting 18 U.S.C. § 921(a)(33)(A)). "[T]here must be 'a realistic probability, not a theoretical possibility, that the State would apply its statute to conduct that falls outside'" the federal definition of the predicate offense. *Moncrieffe v. Holder*, 569 U.S. 184, 191 (2013) (quoting *Gonzales v. Duenas-Alvarez*, 549 U.S. 183, 193 (2007)).

To show such a realistic possibility, Daniels "'must at least point to his own case or other cases in which the state courts in fact did apply the statute in the . . . manner for which he argues.'" *United States v. Castillo-Rivera*, 853 F.3d 218, 222 (5th Cir. 2017) (en banc) (quoting *Gonzales*, 549 U.S. at 193). A defendant must point to an actual state case applying

a state statute in a manner broader than the federal definition, "even where the state statute may be plausibly interpreted as broader on its face." *Id.* at 224 n.4. "[W]ithout supporting state case law, interpreting a state statute's text alone is simply not enough to establish the necessary realistic probability.'" *Id.* at 223.

B

Daniels maintains that the second prong of Tennessee's assault statute—§ 39-13-101(a)(2), which criminalizes "[i]ntentionally or knowingly caus[ing] another to fear imminent bodily injury"—does not have as an element the use or attempted use of physical force, or the threatened use of a deadly weapon; that *Castleman* strongly suggests that not every type of assault defined by § 39-13-101(a) necessarily fits the federal definition of "a misdemeanor crime of domestic violence"; and that § 921(a)(33)(A)'s text and other courts' decisions demonstrate that the "misdemeanor crime of domestic violence" definition does not include crimes with the threatened use of force as an element.

The government contends that, even if indivisible, § 39-13-111(b)—the Tennessee domestic assault statute—categorically qualifies as "a misdemeanor crime of domestic violence." It posits that *Castleman*'s statement is merely *dicta*; the Supreme Court has broadly interpreted the definition of "a misdemeanor crime of domestic violence"; virtually all types of actions that would conceivably cause a person to reasonably fear imminent bodily harm involve the use or attempted use of physical force or threatened use of a deadly weapon; Daniels has not provided the required examples in state case law where this is not

true; Daniels' interpretation would exclude many other states' laws from qualifying as misdemeanor crimes of domestic violence; and legislative history demonstrates that crimes like § 39-13-101(a)(2) qualify as misdemeanor crimes of domestic violence.

C

In concluding that § 39-13-101(a)(1) was a predicate offense under § 922(g)(9), *Castleman* held that "Congress incorporated the common law meaning of 'force'— namely, offensive touching—in § 921(a)(33)(A)'s definition of a 'misdemeanor crime of domestic violence.'"[6] *Castleman*, 134 S.Ct. at 1413. Therefore, "the requirement of 'physical force' is satisfied, for the purposes of § 922(g)(9), by the degree of force that supports a common-law battery conviction." *Id.* In the battery context, "[t]he common law held this element of 'force' to be satisfied by even the slightest offensive touching." *Johnson v. United States*, 559 U.S. 133, 139 (2010) (citing 3 W. Blackstone, Commentaries on the Laws of England 120 (1768)). The Court further explained that "'physical force' is simply 'force exerted by and through concrete bodies,' as opposed to 'intellectual force or emotional force.'" *Castleman*, 134 S.Ct. at 1414 (quoting *Johnson*, 559 U.S. at 138). The Supreme Court in *Voisine v. United States*, ___U.S.___, 136 S.Ct. 2272 (2016), further defined "'use' to mean 'the act of employing' something," and therefore covers reckless uses of physical force, in addition to those that are knowing or intentional. *Id.* at 2278. Taking these cases together,

---

[6]*Castleman* states in *dicta* that "[i]t does not appear that every type of assault defined by § 39-13-101 necessarily involves 'the use or attempted use of physical force, or the threatened use of a deadly weapon. . . . A threat under § 39-13-101[(a)(2)] may not necessarily involve a deadly weapon[.]" *Castleman*, 134 S.Ct. at 1414.

the relevant inquiry becomes whether, under § 39-13-101(a)(2), a person may be convicted of "intentionally or knowingly caus[ing] another to reasonably fear imminent bodily injury" without using or attempting to use physical force, i.e., some form of offensive contact, or the threatened use of a deadly weapon.

Because "force" holds its common law meaning, the court examines how the term was used in common law assault and battery. As *Castleman* and *Johnson* state, "force" was an element of common law battery satisfied by offensive touching. *Castleman*, 134 S.Ct. at 1410; *Johnson*, 559 U.S. at 139. Common law assault, however, incorporated this term of art differently. At common law, assault was "an attempt or offer to apply force of any kind to another person[.]" R.E. Ross, Russell on Crime 573 (9th ed. 1936); *see also* 3 W. Blackstone, Commentaries on the Laws of England 120 (1768) ("By assault; which is an attempt or offer to beat another, without touching him[.]"); Stephen, A Digest of the Criminal Law 177 (3d ed. 1883) (defining assault as, *inter alia*, "an attempt to apply any the least actual force to the person of another directly or indirectly" and "the act of using a gesture towards another giving him reasonably grounds to believe that the person using that gesture meant to apply such actual force to his person"); 1 Hawkins' Pleas of the Crown 110 (8th ed. 1824) ("Hawk. P.C.") ("[A]n assault is an attempt, or offer, with force and violence, to do a corporal hurt to another[.]"). Thus the two methods of committing an assault each involved an inchoate application of force that, if completed, would have constituted a battery or application of force: either by an attempt, or an offer.

A statutory derivation of the latter form of common law assault is at issue here. An offer to apply force required more than words alone, as "no words whatsoever c[ould] amount to assault" at common law. Hawk. P.C. 110. Instead, any words needed to be accompanied by a physical act or gesture. *See, e.g.*, Blackstone, Commentaries 120 ("as if one lifts up his cane, or his fist, in a threatening manner at another[.]"); Hawk. P.C. 110 ("or by holding up one's fist at him; or by any other such-like act done in an angry threatening manner[.]"). These acts, however, do not appear to be physical "force" in and of themselves. "Force" required a completed battery—at a minimum, offensive contact.

Many states, including Tennessee, have now codified this form of assault among their assault and battery statutes.[7] Moving away from the common law's language, these statutes typically prohibit "intentionally or knowingly caus[ing] another to reasonably fear imminent bodily injury" or harm. *See, e.g.*, Tenn. Code Ann. § 39-13-101(a)(2); Ariz. Rev. Stat. Ann. § 13-1203(A)(2); Miss. Code. Ann. § 97-3-7(1)(a)(iii). For this reason, the offense is often referred to as "intentional frightening" assault. As at common law, however, words alone are not enough to cause another to reasonably fear bodily harm. There must be "some act which [intentionally] causes such apprehension" of immediate bodily harm. W. LaFave, 2 Substantive Criminal Law § 16.3. Assault (3d ed. West 2017).

---

[7]Modern statutes typically do not adhere to the common law division between assault and battery, often lumping conduct that would have been a battery at common law as a form of "assault." *See* W. LaFave, 2 Substantive Criminal Law § 16.1. Assault and Battery—Classification (3d ed. West 2017). The court will therefore distinguish when its analysis refers to "common law assault" or a "statutory assault."

Daniels has pointed to a case that establishes the realistic probability, not merely a theoretical possibility, that Tennessee would apply § 39-13-101(a)(2) to conduct that falls outside the federal definition of the predicate offense. In *State v. McCaleb*, 1998 WL 408620 (Tenn. Crim. App. July 22, 1998), the court affirmed a conviction for simple assault under § 39-13-101(a)(2), holding that intentionally raising a fist at another in a threatening manner satisfied the elements of § 39-13-101(a)(2). As the court explained:

> [the victim] encountered the defendant while [the victim] was walking with another attorney, Jerry Smith. Smith greeted the defendant, but [the victim] remained silent. After [the victim] had passed, the defendant approached [him] from behind and stated, "I'm going to get you, you curly-headed m_____f_____." [The victim] turned, noted the defendant had a fist clenched and his teeth gritted, and asked if the defendant was threatening him. [The victim] testified at this point he was in fear of imminent bodily harm from the defendant. The defendant's reply to [the victim] was that he was not threatening him, but that it would not be difficult to "whip you're a__."

*Id* at *2 (last alteration added). The court held that, due to "the defendant's threatening speech and gestures," there was sufficient evidence to find that the defendant intentionally caused the victim to fear imminent bodily injury. *Id*. In other words, the court effectively held that an offense could be committed under § 39-13-101(a)(2) without some form of offensive contact by the defendant or an attempt by the defendant to make physical contact with the victim. Other Tennessee cases also indicate that physical contact is unnecessary. *See State v. Smith*, 492 S.W.3d 224, 241 (Tenn. 2016) (holding that indictment charging that defendant did "threaten to commit Domestic Assault" was sufficient to alert defendant that

§ 39-13-101(a)(2) was assault prong underlying his aggravated assault charge); *State v. Thomas*, 2012 WL 3525389, at \*3, \*3 n.1 (Tenn. Crim. App. Aug. 16, 2012) (holding that evidence was sufficient for conviction under § 39-13-101(a)(2), whether defendant threatened victim with knife or fist, because, either way, "there was no question in the proof that [Appellant] intentionally or knowingly caused [the victim] to reasonably fear serious bodily injury.") (internal quotation marks omitted; alterations in original).

The government contends that § 39-13-101(a)(2)'s required physical act—something as slight as clinching one's fist at another—is a "use of physical force." Therefore, it maintains that a conviction under § 39-13-101(a)(2) requires as an element the "use of physical force." The court disagrees.

*Castleman* and *Johnson* make clear that "force," as used in § 921(a)(33)(A)(ii), is a common law term of art, satisfied by offensive touching. As the foregoing analysis demonstrates, common law "force" did not describe acts that involved neither direct nor indirect offensive contact between the defendant, his instrument, and a victim. In the assault context, "force" did not encompass the mere physical movements that made an "attempt or offer" of force. As applied to § 39-13-101(a)(2), *McCaleb* makes clear that any threatening physical movement is sufficient to "cause[] another to reasonably fear bodily injury," even if no physical contact is made or attempted. Therefore, a "use or attempted use of physical force, or the threatened use of a deadly weapon" is not a necessary element of § 39-13-101(a)(2).

This definition of "use or attempted use of physical force" makes sense given the text of § 921(a)(33)(A)(ii). The statute specifies that a "misdemeanor crime of domestic violence" must have one of three possible required elements: (1) a use of physical force; (2) an attempted use of physical force; or (3) the threatened use of a deadly weapon. Because a "use of physical force" requires employing offensive contact, it covers all state statutes that codify common law battery. "Attempted use of force" addresses all attempts at such contact, thereby covering all statutes codifying attempted battery assault. A specific type of threat—threatened use of a deadly weapon—is also covered. On the other hand, if "use of physical force" encompassed *any* physical act, "attempted use of physical force" would be superfluous; any attempted battery would have already been covered as a "use of force," since any attempted battery requires physical movement. "The Government's reading is thus at odds with one of the most basic interpretive canons, that '[a] statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant[.]'" *Corley v. United States*, 556 U.S. 303, 314 (2009) (quoting *Hibbs v. Winn*, 542 U.S. 88, 101 (2004) (second internal citation and quotation marks omitted)). The court follows this basic interpretive cannon here.

By anchoring "use of physical force" in requiring offensive contact, § 921(a)(33)(A)(ii) covers statutes that criminalize common law battery, the attempted battery version of assault, and assaults involving the threatened use of a deadly weapon. Not covering all "intent to frighten" assault statutes appears to be a deliberate choice when

compared to the language of nearby statutory text.[8]  For example, 18 U.S.C. § 922(g)(8) prohibits, *inter alia*, firearm possession by an individual subject to a court order that restrains the person from "engaging in . . . conduct that would place an intimate partner in reasonable fear of bodily injury," or that prohibits "the use, attempted use, or threaten use of physical force against such intimate partner or child that would reasonably be expected to cause bodily injury[.]"  18 U.S.C. § 922(g)(8)(B) & (C)(ii).  Congress could have incorporated this language to ensure that "misdemeanor crimes of domestic violence" cover all forms of assault.  By not doing so, it presumably made a judgment as to which offenses merited a lifetime ban on possession of a firearm and which offenses did not.

The government offers several arguments for why the court is not bound by *Castleman*.  First, it contends that *Voisine*'s broad interpretation of "use" calls for a broader interpretation of "use of physical force."  *Voisine*'s holding, however, does not extend this far.  The Court did make clear that "use" is not a term of art under the common law, and is to be interpreted according to its plain meaning: the act of employing something.  *Voisine*, 136 S.Ct. at 2278.  Therefore, the Court concluded that this understanding of "use" covered reckless uses of force, even though common law battery only criminalized intentional or

---

[8]The legislative history of § 929(g)(9) cited in *Castleman* also indicates that Congress sought to exclude certain conduct through its definition of "misdemeanor crime of domestic violence."  "The provision originally barred gun possession for any 'crime of domestic violence,' defined as any 'felony or misdemeanor crime of violence, regardless of length, term, or manner of punishment.'"  *Castleman*, 134 S. Ct. at 1415 (quoting 142 Cong. Rec. 5840).  Congress then narrowed the definition to require a use of physical force to "address the fear that § 922(g)(9) might be triggered by offenses in which no force at all was directed at a person."  *Id.* at 1416.

knowing uses. *Id.* at 2280. But while *Voisine* broadened the mens rea encompassed by "use," it did not alter *Castleman*'s requirement of contact in the actus reus of "physical force." Indeed, in both of *Voisine*'s examples of the "use of physical force," there is physical contact between the defendant's instrument and the victim.[9] And the government cites no case—and this court has found none—otherwise holding that a statute criminalizing intentionally causing another to reasonably fear imminent bodily harm requires the use of "physical force," as that term is used in § 921(a)(33)(A).[10] The court declines to do so as

---

[9]In explaining its holding that § 921(a)(33)(A)'s definition covers reckless uses of force, the Court offered two examples of actively employing physical force:

> If a person with soapy hands loses his grip on a plate, which then shatters and cuts his wife, the person has not "use[d]" physical force in common parlance. But now suppose a person throws a plate in anger against the wall near where his wife is standing. That hurl counts as a "use" of force even if the husband did not know for certain (or have as an object), but only recognized a substantial risk, that a shard from the plate would ricochet and injure his wife. Similarly, to spin out a scenario discussed at oral argument, if a person lets slip a door that he is trying to hold open for his girlfriend, he has not actively employed ("used") force even though the result is to hurt her. But if he slams the door shut with his girlfriend following close behind, then he has done so—regardless of whether he thinks it absolutely sure or only quite likely that he will catch her fingers in the jamb.

*Voisine*, 136 S. Ct. at 2279.

[10]In fact, courts have held the opposite. *See United States v. Horse Looking*, 828 F.3d 744, 747 (8th Cir. 2016); *United States v. Smith*, 171 F.3d 617, 620 (8th Cir. 1999). Because neither of these cases engages in an analysis of either *Castleman* or *Voisine*, the court acknowledges that their precedential value is limited.

well.

The text of the statute and the Supreme Court's definitions aside, the government also contends that requiring "physical contact" undermines Congress' intent "to bar those domestic abusers convicted of garden-variety assault or battery misdemeanors . . . from owning guns." *Voisine*, 136 S.Ct. at 2280.  The government is correct that, in several cases, the Supreme Court has declined interpretations of § 922(g)(9) that would severely limit its effects.  *See Voisine*, 136 S.Ct. at 2280 ("What is more, petitioners' reading risks rendering § 922(g)(9) broadly inoperative in the 35 jurisdictions with assault laws extending to recklessness—that is, inapplicable even to persons who commit that crime knowingly or intentionally."); *Castleman*, 134 S.Ct. at 1413 ("[I]f offensive touching did not constitute 'force' under § 921(a)(33)(A), then § 922(g)(9) would have been ineffectual in at least 10 States—home to nearly thirty percent of the Nation's population—at the time of its enactment."); *United States v. Hayes*, 555 U.S. 415, 429 (2009) (rejecting an interpretation under which "§ 922(g)(9) would have been 'a dead letter' in some two-thirds of the States from the very moment of its enactment").  Therefore, the Court has declined to interpret "use of physical force" in a way that eschews a significant portion of the assault and battery misdemeanors that prosecutors regularly applied to domestic abusers at the time of § 922(g)(9)'s enactment.

The court does not harbor such concerns here.  *Voisine*, *Castleman*, and *Hayes* only noted the potential effects on § 922(g)(9) in support of their separate textual conclusions; the

potential effects were never used to support a conclusion that went against the statute's text. *See Voisine*, 136 S.Ct. at 2278-80; *Castleman*, 134 S.Ct. at 1410-14; *Hayes*, 555 U.S. at 420-25. Here, the statutory text and application of Supreme Court precedent make clear that a "use of physical force" requires some sort of physical contact, and that "attempted use of physical force" requires an attempt to make such physical contact. While it is true that several state statutes might not qualify as misdemeanor crimes of domestic violence as a result, the statutory text suggests that this exclusion is part of Congress' intent.

Moreover, the court's holding does not undermine the effectiveness of § 922(g)(9). The government highlights seven states whose statutes it contends will be rendered ineffective if the court sides with Daniels' position. Of these seven, however, three of the statutes are plainly divisible; they give the "intentional frightening" version of assault a different punishment than other forms of assault. *See* Ariz. Rev. Stat. Ann § 13-1203(A)(2); Ark. Code Ann. § 5-13-207(a); Mo. Ann. Stat. § 565.056(1). As a result, domestic abusers could still be prosecuted under § 922(g)(9) if they were convicted under other qualifying statutes in these states. And as *Castleman* notes, "[t]he 'assault or battery laws' under which domestic abusers were . . . routinely prosecuted' when Congress enacted § 922(g)(9) . . . fall generally into two categories: those that prohibit both offensive touching and the causation of bodily injury and those that prohibit only the latter." *Castleman*, 134 S.Ct. at 1413 (quoting *Hayes*, 555 U.S. at 427). Both categories remain viable under this court's decision. In this way, the court's holding does not make § 922(g)(9) the "dead letter" that the Court

sought to avoid in *Voisine*, *Castleman*, and *Hayes*. Therefore, the court is unpersuaded that it should alter its application of the relevant statutory text and Supreme Court precedent.

The government contends that holding that § 39-13-101(a)(2) does not qualify as a misdemeanor crime of domestic violence leads to absurd results. It notes that § 39-13-101(a)(3) qualifies as a misdemeanor crime of domestic violence—it criminalizes "offensive touching"—and is classified as a class B misdemeanor. Tennessee at the same time, however, classifies § 39-13-101(a)(2) as a class A misdemeanor— a more serious crime. The government maintains that it would be illogical and absurd for a version with a lower maximum sentence to be covered by § 922(g)(9), while another version with a higher sentence is not. The court disagrees.

First, regardless of the punishments they carry, § 39-13-101(a)(1) and (a)(3) both require some form of physical contact. As the court has explained, § 39-13-101(a)(2) does not. An offense under § 39-13-101(a)(2) can be committed without physical contact.

Second, Congress, in passing § 922(g)(9), and the Tennessee legislature, in establishing punishments for varying forms of assault, were attempting to answer different questions with different goals. In establishing punishments, a legislature may have varying objectives, such as retribution for the offense at issue, deterrence of future offenses, reformation of the offender, among others. On the other hand, Congress, in determining which domestic violence offenders should no longer be permitted to possess firearms, had only one objective: incapacitating an offender's future violent capabilities. *See Castleman*,

134 S.Ct. at 1408-09; *Voisine*, 136 S.Ct. at 2275; *Hayes*, 555 U.S. at 427. That Congress' definition does not perfectly mirror the escalating severity of Tennessee's assault sentences is likely attributable to different objectives.

Moreover, it would be impossible for Congress to perfectly reflect all states' judgments on the seriousness of the varying forms of assault because these judgments differ. Tennessee chooses to punish "intentional frightening" assault less than "offensive touching." But in Texas, the two offenses receive the same punishment. *See* Tex. Penal Code Ann. § 22.01 (West 2017). And a number of states choose not to criminalize "intentional frightening" assault at all, instead criminalizing only attempted battery. *See, e.g.*, Cal. Penal Code § 240 (West 2018); Ohio Rev. Code Ann. § 2903.13 (West 2017). Thus the apparent mismatch between one state's sentencing arrangements and the federal consequences for a particular offense does not suggest that the court should part from its application of statutory text and precedent.

The court therefore holds that a "use or attempted use of physical force, or the threatened use of a deadly weapon" is not a necessary element of § 39-13-101(a)(2); that, as a result, Daniels' conviction for "domestic assault" under § 39-13-111(b) did not necessarily include a "use or attempted use of physical force, or the threatened use of a deadly weapon" as an element; and that Daniels' conviction does not therefore qualify as "a misdemeanor crime of domestic violence" under § 922(g)(9). The court grants Daniels' motion and dismisses the indictment for failure to charge a § 922(g)(9) offense.

# VI

So far as the court is aware, Daniels is being detained on the instant charge alone. Unless the government can establish otherwise, he is entitled to be released from pretrial detention based on the dismissal of the indictment. In order to provide the government sufficient time to show that there is another lawful reason to detain Daniels, or to seek a stay of this decision in the court of appeals, the court stays Daniels' release for 48 hours, through May 3, 2018 at 1:00 p.m. The stay shall lapse automatically, and Daniels shall be released, unless the court of appeals or this court orders otherwise.

\* \* \*

For the reasons explained, the court concludes as a matter of law that the indictment does not contain the elements of a § 922(g)(9) violation, grants Daniels' motion to dismiss, and dismisses the indictment.

**SO ORDERED**.

May 1, 2018.


SIDNEY A. FITZWATER
UNITED STATES DISTRICT JUDGE